ANTHONY, *Appellant*, v. BEAL *et al.*

Division One, October 31, 1892.

1. **Lost Deed**: ESTABLISHMENT OF TITLE: STATUTE: PRACTICE.   Under the act of the legislature approved March 28, 1873 (Laws, p. 48; Revised Statutes, 1879, sec. 3454, *et seq.*), providing for the establishment of title to real property and the restoration of the record of the same, it is the duty of the trial court to find the facts as to the execution and loss of the deed in question, and, if sufficient, to establish

such execution and loss, to declare the estate thereby conveyed to plaintiff, and, if the facts are not sufficient to establish the execution and loss of the deed, to so declare and dismiss the petition.

2. ———: ———: ———. The purpose of the proceeding under the foregoing statute is not to try title.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*Boyle, Adams & McKeighan* for appellant.

(1) Aside from provisions of statute, the general rule is that a quitclaim deed simply transfers whatever interest the grantor may then have, and is subject to a prior deed of the same grantor, although the grantee had neither actual or constructive notice of such prior deed. *Sharp v. Cheatham*, 88 Mo. 498; *Munson v. Ensor*, 94 Mo. 509. (2) The rule is modified by statute so that the prior unrecorded deed is invalid except as between the parties thereto, and those having actual notice thereof. Revised Statutes, 1879, sec. 693. (3) But to entitle a grantee of land, without notice, to protection against a prior unrecorded conveyance, he must have parted with some valuable consideration. *Aubuchon v. Bender*, 44 Mo. 560; *Bishop v. Schneider*, 46 Mo. 472; *Fox v. Hall*, 74 Mo. 315. Direct and positive knowledge, and a knowledge of facts to which one chooses to be blind, lest following up the inquiry would lead to the disclosure, are both actual knowledge, not differing in kind, but only in the character of the proof. *Hill v. Tissier*, 15 Mo. App. 299. Where one is put upon inquiry, it is equivalent to knowledge of every fact which would have been disclosed by reasonable prosecution of the inquiry. *Meier v. Blume*, 80 Mo. 179; *Swisher v. Sensenderfer*, 84 Mo. 104. And where a purchaser is conscious of having the means of

knowledge, but does not use them, he is chargeable with actual notice. *Speck v. Riggin*, 40 Mo. 405; *Sensenderfer v. Kemp*, 83 Mo. 582; 2 Pomeroy on Equity, sec. 597. The law imputes to a purchaser of land knowledge of all facts relating thereto appearing at the time of his purchase upon the muniments of title which it was necessary for him to examine in order to ascertain the sufficiency of such title. *Mason v. Black*, 87 Mo. 329; *Wolfe v. Dyer*, 95 Mo. 545. And he is bound to read a prior recorded deed in the light of all the facts shown upon its face, and is chargeable with the information such facts fairly and reasonably suggest. *Wolfe v. Dyer*, 95 Mo. 545. Proof of the notoriety of a fact is competent to show knowledge thereof by one whose interest is affected by such fact. *Crane v. Railroad*, 87 Mo. 588; *Musick v. Barney*, 49 Mo. 458. (4) A deed made by a minor may be disaffirmed after reaching majority by the making of another deed. *Baker v. Knecht*, 54 Mo. 82; *Mfg. Co. v. Lamb*, 81 Mo. 221. And any matter occurring after suit brought may be set up in a supplemental pleading. Revised Statutes, 1889, sec. 2104; *Kortzendorfer v. St. Louis*, 52 Mo. 204.

*E. C. Kennen* and *George Robertson* for respondents.

(1) The record at the time defendants bought disclosed a complete chain of title from the government down to Woodward, and the purchasers, Reed and Beal, were not bound to take notice of any deed of record outside of this chain. The deed from Cook to Hulda Anthony being outside of this chain was no notice to anyone of anything. *Crockett v. McGuire*, 10 Mo. 34; *Tydings v. Pitcher*, 82 Mo. 384; *Sensenderfer v. Kemp*, 83 Mo. 582; 1 Devlin on Deeds, sec. 713, and note;

*St. John v. Conger*, 40 Ill. 537. The deed of the heir will prevail over the prior unrecorded deed of the ancestor. *Youngblood v. Foster*, 64 Mo. 239; *Callaway v. Fash*, 50 Mo. 422; Tiedeman on Real Property, sec. 817. (2) These defendants, Reed and Beal, paid a valuable consideration for their title, as did Woodward for the deed from Wilcox heirs, and, although they each took quitclaim deeds, a purchaser by quitclaim for value is as well protected by the registry acts as he would have been had he taken title by warranty deeds. *Fox v. Hall*, 74 Mo. 315; *Boogher v. Neece*, 75 Mo. 364; *Willingham v. Hardin*, 75 Mo. 429; *Vance v. Corrigan*, 78 Mo. 96; *Campbell v. Gas Co.*, 84 Mo. 364; *Cowell v. Grey*, 85 Mo. 177; *Anderson v. McPike*, 86 Mo. 299; *Sharp v. Cheatham*, 88 Mo. 510; *Munson v. Ensor*, 94 Mo. 509; 1 Devlin on Deeds, sec. 672, and notes; *Coal Co. v. Bingham*, 97 Mo. 196. (3) Although Woodward may have procured his deed through fraud, or may have had notice of the prior unrecorded deed from Bruce Wilcox to Cook, yet he could give good title to an innocent purchaser or to one without such notice. *Craig v. Zimmerman*, 87 Mo. 475; 5 American & English Encyclopedia of Law, pp. 452–3. (4) Plaintiffs cause of action was barred by the statute of limitations and the judgment was, therefore, properly entered for defendants. Revised Statutes, 1879, sec. 3229; *Hunter v. Hunter*, 50 Mo. 488; *Robinson v. Ware*, 94 Mo, 678. (5) Plaintiff waived his right to complain of the action of the court in striking out a part of his amended petition by not standing upon his original pleading. His proceeding to trial upon the amended pleading was an acquiescence in this action of the court. *Ely v. Porter*, 58 Mo. 158; *Gale v. Maupin*, 47 Mo. 276; *Fuggle v. Hobbs*, 42 Mo. 537. (6) Plaintiff was guilty of such laches as will estop him now from making a claim adverse to defendant's interest. *Landrum v. Bank*, 63 Mo. 49;

*Kline v. Vogel*, 90 Mo. 248; *Stamper v. Roberts*, 90 Mo. 688. (7) The court properly ruled in striking out that part of the amended petition charging that Helen D. and Robert B. Wilcox were minors when making the deed to Woodward and that since the commencement of this suit they had joined in a deed to plaintiff. The matter thus stricken out constituted a new and different cause of action than was stated in the original petition, and would require different proof to sustain it. *Lumpkin v. Collier*, 69 Mo. 170; *Scovill v. Glasner*, 79 Mo. 449.

BRACE, J.—This is a proceeding commenced in the Audrain circuit court on the fourteenth of November, 1888, under the provisions of article 4, chapter 58, Revised Statutes, 1879.

It appears from the record that notice of the filing of the petition was duly published as required by section 3455 of said act, and a copy of such notice served on H. F. Woodward, W. H. Beal, J. W. Reed, B. E. McNama and Abraham Whisner, two of whom, viz.: W. H. Beal and J. W. Reed, appeared at the January term, 1889, of said court and filed a demurrer to the petition, which being overruled, they afterwards on the twenty-second day of February, 1889, filed separate answers thereto, to which the plaintiff replied on the fourth day of June, 1889.

Afterwards on the twenty-sixth of July, 1889, the plaintiff having first obtained leave filed a supplemental and amended petition, in words and figures as follows, omitting caption, signatures and affidavit:

"Your petitioner, the said plaintiff, now comes and represents and shows to the court by way of amended and supplemental petition herein, leave of court having been first had and obtained, that he is the owner by fee

VOL. 111—41

simple absolute of the northeast quarter of section 36, township fifty-two (52) north, range 7 west of the fifth principal meridian in said county of Audrain; that the title to said land passed out of the United States to one Thomas H. Luck, by patent dated December 1, 1857, and which was recorded in the recorder's office of said county of Audrain, on the first day of April, 1869, in book R, page 612; that on, to-wit, the twenty-first day of April, 1858, said Luck, by deed of general warranty, sold and conveyed said land to one Thomas B. Hudges, Jr., which deed was recorded in the office of recorder of deeds of said Audrain county, on, to-wit, the sixth day of July, 1858, in book 1, page 432.

"That on, to-wit, the twenty-eighth day of June, 1858, said Thomas B. Hudges, by deed of general warranty, conveyed said lands to one Bruce ·Wilcox, which deed was duly recorded in the office of the said recorder of deeds, on, to-wit, the sixth day of July, 1858, in book 1, page 433.

"That on, to-wit, the —— day of October, 1862, as he is informed and believes and charges the said Bruce Wilcox and his wife, Abigail D. Wilcox, by deed of quitclaim, duly delivered, conveyed said land for a valuable consideration to one Wm. Z. Cook. ·

"That on, to-wit, the twenty-fourth day of October, 1862, said Cook and his wife, by deed of general warranty, conveyed said land to one Hulda Anthony, which deed was duly recorded in the office of the recorder of deeds for said county, on the first day of May, 1863, in book L, page 584.

"That on, to-wit, the fifth day of November, 1888, the said Hulda Anthony conveyed by general warranty deed said land to plaintiff.

"Your petitioner states that as he is informed and believes and charges the said W. Z. Cook, upon receiving said deed to said land from the said Bruce Wilcox

and wife, to-wit, on or about the —— day of October, A. D. 1862, sent by mail from Rochester, New York, postage prepaid, said deed, for record, to the recorder of deeds of said county of Audrain including lawful fee with instructions when recorded to send same to plaintiff.

"Your petitioner states that said deed as he is informed and believes and so charges the truth to be was lost or miscarried and never reached said recorder, or, if it did reach him, was by him lost or mislaid, so that it never was recorded.

"Your petitioner states that as he is informed and believes and so charges the said Wm. Z. Cook furnished the purchase money, to-wit, $2,700, to buy said land from said Hudges and caused the title to be put in the name of said Wilcox as trustee for said Cook, and said lost deed was given for the purpose of executing said trust and putting the title in said Cook, which said lost deed was properly acknowledged by said Wilcox and wife, recited a nominal consideration, named said Cook as grantee and contained the general granting and conveying words of quitclaim deeds.

"Your petitioner states that all of the other deeds hereinbefore referred to expressed and were for a valuable consideration.

"Your petitioner further states on information and belief and so charges the truth to be that prior to the twenty-eighth day of March, 1884, the said Bruce Wilcox departed this life, leaving as his widow the said Abigail D. Wilcox and as his heirs-at-law the following children, viz.: Robt. B. Wilcox, Helen D. Wilcox and Chas. D. Wilcox; that on, to-wit, the twenty-eighth of March, 1884, the said Henry F. Woodward, well knowing and having good reasons to know that said Bruce Wilcox and wife had made a conveyance of said land to said Cook, and that said Cook had conveyed

the same to said Hulda Anthony, procured the said Abigail D. Wilcox, R. B. Wilcox and Helen D. Wilcox to join in a quitclaim deed of said land for an expressed nominal consideration of $1, to him, the said Woodward, which deed was recorded on March 29, 1884, in book 24, page 52, of the records of said county; and also on, to-wit, said twenty-eighth day of March, 1884, procured the said Charles D. Wilcox to make a quitclaim deed of said lands to him, the said Woodward, for an expressed nominal consideration of $1, which deed was recorded on May 7, 1884, in book 24, page 143, of the records of said county. Your petitioner represents and shows to the court on information and belief and so charges the truth to be, that no consideration at all, not even a nominal one, was paid by said Woodward to said Wilcox grantors, or either of them for said conveyances; but the same were made and procured on the wilfully and knowingly false and fraudulent representation of said Woodward to said Wilcox grantors; that there was a misdescription in the said deed from said Bruce Wilcox and wife to said Cook, and he wanted to get it corrected; that he was acting as agent for some person who was going to buy said land, which representations and each and all of them were false and fraudulent, and known to be so by said Woodward at the time. But the said Wilcox grantors and each of them relied on them, and were induced to make said deeds by reason of them.

"Your petitioner further represents and shows on information and belief, and so charges the truth to be: That, when the said Helen D. Wilcox and Robert B. Wilcox joined in the execution and delivery of said deeds to said Woodward, they were both minors; that Robert Wilcox arrived at the age of twenty-one on, to-wit, the eleventh day of October, 1887, and said Helen D. Wilcox at the age of eighteen on, to-wit, the

fifteenth day of July, 1886; that, to-wit, on the twenty-fifth day of June, 1889, the said Robert B. Wilcox disaffirmed and revoked his said deed to said Woodward by executing and delivering a quitclaim deed of said land to said plaintiff, which deed expressly revokes and disaffirms his said deed to said land. And on, to-wit, the fifth day of July, A. D. 1889, said Helen D. Wilcox in the same way disaffirmed and revoked her said deed to said Woodward.

"Your petitioner further represents and shows to the court that, while said deed by said Cook was made to said Hulda Anthony, the consideration therefor was paid by said plaintiff, and said Hulda Anthony held the title as trustee for him, and within a few months made a deed to him, the said plaintiff, but, being a married woman, on the advice of counsel he procured the making and delivery to him by said Hulda Anthony of the deed hereinbefore referred to, her husband having died. And said plaintiff on the making of said deed by said Cook to said Hulda Anthony took immediate possession of said land and remained in the open, notorious and exclusive possession of the same up to, to-wit, the —— day of July, 1884, when said Woodward forcibly and without right took possession of the same.

"Said plaintiff alleges that he has paid the taxes on said land since the deed to said Hulda Anthony.

"Your petitioner further states that he is informed and believes that the others of said defendants claim some interest and right in and to said land or portions thereof, and said McNama and Whisner at the date of the commencement of this suit were in possession of said land or some portion thereof under leases from some of the other defendants, but whatever claim said defendants have or either of them, the same is without legal right or claim as against this plaintiff, as he avers.

"Wherefore your petitioner prays, the premises considered, that on the final hearing of this case the estate and interest of this plaintiff be adjudged and deemed to be an estate in fee simple absolute and for such other and further relief as in equity and good conscience this plaintiff is entitled to."

Afterwards on the thirtieth of August, 1889, Reed and Beal each filed separate answers to this supplemental and amended petition; the answer of Reed is as follows:

"Now comes J. W. Reed, a defendant in said cause, and by leave of court files his separate amended answer herein to plaintiff's first amended and supplemental petition herein. He admits that the title to said lands passed out of the United States to one Thomas H. Luck, and that said Luck conveyed said lands to one, Hudges, Thomas B., Jr., and that said Hudges conveyed said lands to one, Bruce Wilcox, and that said instruments of conveyance are duly recorded as alleged in plaintiff's petition.

"Defendant further answering denies each and every other allegation in said petition, made and set forth, except as herein fully stated. Defendant further answering says that said Bruce Wilcox died on the —— day of ——, 18—, and left surviving him his widow, Abigail D. Wilcox, and his sons, Charles D. Wilcox, R. B. Wilcox, and his daughter, Helen D. Wilcox, as his only heirs-at-law, and that on the —— day of March, A. D. 1884, said surviving heirs, with the said widow, conveyed said lands to one, Henry F. Woodward, by a quitclaim deed, for a valuable consideration.

"That afterwards, to-wit, on the first day of April, 1884, said Woodward entered into the possession of said lands, and exercised acts of ownership over the same in the usual and customary manner; and on the

eighth day of February, 1886, sold said lands, by
warranty deed, to one, Henry Koch, which deed was
duly recorded, as were the deeds obtained by the said
Woodward from the said Abigail D. Wilcox, and the
heirs of the said Bruce Wilcox, deceased; that Henry
Koch went into the possession of the said lands under
the said Woodward, and remained in possession thereof
for a long time; that said Henry Koch gave a deed of
trust upon said lands, while in possession thereof, to
one, John T. Ricketts, as trustee to secure certain notes
therein in the event of default of payment of said notes,
and that said trustee did sell said lands under the
powers of lien granted in said deed of trust on the
thirtieth day of March, 1888, to the said Henry F.
Woodward, which said trust deed was duly acknowl-
edged, delivered and recorded; that afterwards, to-wit,
on the first day of July, 1888, said Woodward conveyed
all that portion of said land laying south of the Chicago
& Alton railroad to this defendant by a general
warranty deed, and this defendant in good faith
accepted the same and paid full value for said lands,
and is now the owner of the same, and defendant does
not claim or pretend to own any other part of said
lands, and alleges that the other part of said lands
belongs to one, W. H. Beal.

"Defendant further answering says that he has no
knowledge or information thereof sufficient to form a
belief, whether the allegations in plaintiff's said
amended petition be true or no, that the said Wilcox
heirs were, at the time said deeds were executed to the
said Woodward, minors, and whether they have dis-
affirmed the same; but defendant alleges and charges
the fact to be that, if such allegations of plaintiff's peti-
tion be true, such disaffirmance was made at the special
instance and request of this plaintiff, and for his sole
benefit and with full knowledge of the fact that the

said lands had been conveyed by the said Woodward to this defendant in good faith as herein alleged and with the further knowledge of the fact that said minors had before that had reasonable time in which to disaffirm said deeds, but had not done so. Defendant further answering alleges that the plaintiff's cause of action did not accrue to him or to anyone through whom he claims an interest in said lands within ten years last past preceding the filing of his petition herein.

"Wherefore, defendant prays judgment in his behalf that plaintiff shall not be allowed to prove said lost deed as alleged by him and thus throw a cloud upon defendant's title to said land.

Defendant further answering says that plaintiff should not be allowed to prosecute this suit, even if all the allegations of his petition be true, because he obtained his title from said Hulda Anthony, with full knowledge of the facts that the said Woodward and Koch were in possession of said lands claiming to own the same, and that they were trading and selling the same. And defendant further says that plaintiff, by his laches and the laches of those under whom he claims, has lost all right to now interfere with the title of this defendant. Whereupon, defendant asks to be discharged with his costs."

The answer of Beal is as follows:

"Now comes W. H. Beal, a defendant in said cause, and by leave of court files his separate answer to plaintiff's first amended and supplemental petition herein. He admits that the title to said lands passed out of the United States to one Thomas H. Luck, and that said Luck conveyed said lands to one Thomas B. Hudges, Jr., and that said Hudges conveyed said land to one Bruce Wilcox and that said instrument of conveyance was duly recorded, as alleged in plaintiff's petition. Defendant further answering denies each and

every other allegation in said petition made and set forth, except as herein fully stated.

"Defendant further answering says that Bruce Wilcox died on the —— day of ——, 18 —, and left surviving him his widow, Abigail D. Wilcox, and his sons, Charles D. Wilcox, R. B. Wilcox, and his daughter, Helen D. Wilcox, as his only heirs-at-law, and that on the first day of March, 1884, said surviving heirs, with the said widow, conveyed said land to one Henry F. Woodward by quitclaim deeds for a valuable consideration; that afterward, to-wit, on the —— day of July, 1888, said Woodward conveyed all that portion of said land lying north of the Chicago & Alton railroad to this defendant by general warranty deed, and the defendant in good faith accepted the same, and paid full value for said lands, and is now owner of the same. And defendant does not claim or pretend to own any other part of said lands, and alleges that the other part of said land belongs to one J. W. Reed.

"Defendant further answering says that he has no knowledge or information thereof sufficient to form a belief whether the allegation in plaintiff's said amended petition be true or not; that the said Wilcox heirs were at the time said deeds were executed to the said Woodward minors, and whether they have disaffirmed the same; but defendant alleges and charges the fact to be that if such allegation of plaintiff's petition be true such disaffirmance was made at the special instance and request of this plaintiff, and for his sole benefit and with full knowledge of the fact that said land had been conveyed by the said Woodward to this defendant in good faith as herein alleged and with the further knowledge of the fact, that said minors had before that had reasonable time in which to disaffirm said deeds, but had not done so.

"Defendant further answering alleges that plaintiff's cause of action did not accrue to him or to any

one through whom he claims any interest in said lands within ten years last past preceding the filing of his petition herein.

"Wherefore defendant prays judgment in his behalf and that plaintiff shall not be allowed to prove said lost deed as alleged by him and thus throw a cloud upon defendant's title to said lands. Defendant answering further says that plaintiff should not be allowed to prosecute this suit even if the allegations of his petition be true, because by his laches and those under whom he claims he has lost all right to do so. Wherefore defendant asks to be discharged with his costs."

Afterwards at the June term, 1890, of said court, on motion of said defendants, the following portion of the amended and supplemental petition not contained in the original petition was stricken out:

"Your petitioner further represents and shows on information and belief, and so charges the truth to be, that, when the said Helen D. Wilcox and Robert B. Wilcox joined in the execution and delivery of said deed to said Woodward, they were both minors; that Robert B. Wilcox arrived at the age of twenty-one on, to-wit, the eleventh day of October, 1887, and said Helen D. Wilcox at the age of eighteen on, to-wit, the fifteenth day of July, 1886; that on, to-wit, the twenty-fifth day of June, 1889, the said Robert B. Wilcox disaffirmed and revoked his said deed to said Woodward by execution and delivered a quitclaim deed of said land to said plaintiff, which deed expressly revokes and disaffirms his said deed to said land. And on, to-wit, the fifth day of July, A. D. 1889, said Helen D. Wilcox in the same way disaffirmed and revoked her said deed to said Woodward."

To which action of the court the plaintiff excepted. Thereupon the cause was submitted to the court on the

pleadings and the evidence introduced by the petitioner and the said defendants, Reed and Beal.

The undisputed facts are that, when in 1884 Wood-ward obtained the quitclaim deeds from the widow and heirs of Bruce Wilcox, and went into possession of the lands described in the petition, the land records of Audrain county showed a complete chain of title thereto from the government to the said Wilcox, and no conveyance by him of such title, acquired on the twenty-eighth of April, 1858, by his deed from Hudges, recorded July 6, 1858, to anybody; that there also appeared upon the records at that time a deed from Wm. Z. Cook conveying the premises to one Hulda Anthony, dated October 24, 1862, and recorded May 1, 1863; also a tax deed to Adam Weaver, November 1, 1866, for taxes of 1858 and 1859; a tax deed to Adam Weaver October 27, 1866, for taxes of 1861 and 1862, and a quitclaim deed from Weaver to the plaintiff, D. M. Anthony, of September 15, 1868; also a tax deed from the collector to plaintiff, D. M. Anthony, of date December 2, 1869, for the taxes of 1866, and one to D. M. Anthony of date December 2, 1869, for the taxes of 1865, all recorded at the time they were made; that Bruce Wilcox died some time prior to 1884, and when in that year Woodward put upon record the quitclaim deed from his widow and heirs-at law the record showed the legal title to the premises to be in him, Woodward, with a possible claim in the plaintiff to the land under his tax deeds, none of which, however, it was conceded on the trial, conveyed any title.

When in July, 1888, the defendants, Reed and Beal, purchased the premises from Woodward, he and those claiming under him had been in possession of the premises for more than four years, and the records showed the legal title to be then in him, no convey-ances thereof having been recorded since 1884, except

those from and to Woodward mentioned in the answer of Reed; that they paid Woodward a valuable consideration for the lands, and each received a deed from him for the portion he bought, placed his deed upon record and went into possession under the same, and so remained in possession until this proceeding was commenced on the fourteenth of November, 1888.

Upon this state of the land records and conceded facts the petitioner introduced in evidence a quitclaim deed from Hulda Anthony to himself, dated April 8, 1869, and a warranty deed from her to himself dated October 31, 1889, conveying the premises, neither of which deeds had been recorded when this proceeding was commenced; and, for the purpose of proving the allegations of the petition in regard to the execution and delivery of a quitclaim deed by Bruce Wilcox and wife to William Z. Cook, introduced depositions of Mrs. Abigail D. Wilcox and himself.

Mrs. Wilcox testified that Cook was her brother; that in the years 1858 to 1863 he was residing in Chester and she in Chicago, Illinois; that she knew of a conveyance by Bruce Wilcox and herself, she thinks, in or about the year 1862 of some land in Missouri to Cook; and in regard thereto testified as follows in chief: "*Q.* Just state who your brother was. *A.* Wm. Z. Cook; he put the land into Mr. Wilcox's name; then we did not know about that, until he wished to dispose of it, and he brought it to us, the deed—it was a quitclaim deed—wishing us to convey it back to him.

"*Q.* Before that time, Mrs. Wilcox, had you or Mr. Wilcox ever seen the deed of the land to Mr. Wilcox? *A.* Not before that time—no, sir.

"*Q.* Was that deed to Mr. Wilcox ever delivered to him? *A.* No, sir; it was never delivered to him; he never had it.

"*Q.* State whether or not Mr. William Z. Cook, at the time you speak of, had this deed, conveying the land to Mr. Wilcox. *A.* He had the deed for us to sign, to convey it back to him; that was the deed he had.

"*Q.* Did you see the other deed at that time? *A.* I think we did see it at that time.

"*Q.* State whether or not you signed that quit-claim deed that you speak of. *A.* We both signed it; it was before a notary public, but I don't remember who it was before now.

"*Q.* Well, the nearest that you can get it—where did the notary reside at that time? *A.* Well, we were keeping boarders at 100 Madison street, about one hundred boarders, and we have quite a number of notaries public there, and we had several lawyers there too at the time, and it was signed before one of these, but I don't remember which one.

"*Q.* Do you remember the notary public putting his seal and his certificate on the deed? *A.* I remember of having the business properly transacted; I remember the seal, I remember that; I don't remember the man's name, what it was, but I remember it was properly done then.

"*Q.* At that time did you have any conversation with Mr. Cook or Mr. Wilcox in relation with whom he was doing that, or who he was trading with? *A.* Mr. Cook said he was going to make some trade with him; he said it was in our name, and he wished us to sign the deed, so he could make a trade.

"*Q.* Did he state who he was trading with? *A.* Well, I think it was Mr. Anthony.

"*Q.* Do you remember that name? *A.* I remember the name; yes, sir, it was some one east; we did not know it was in our name until he brought the deed for us to sign again to convey it back.

"*Q.* After signing this deed, conveying it to Mr. Cook, what was done with that deed? *A.* Well, it was given to Mr. Cook.

"*Q.* State whether you or your husband ever paid anything for that land. *A.* No, we never paid anything for it.

"*Q.* State whether you received anything when you conveyed it to Mr. Cook. *A.* No, sir; we never received anything.

"*Q.* Now, what was this land, as near as you can remember; where was it located? *A.* It was in Missouri; it was wild land; that is all I know about it."

And on cross-examination: "*Q.* Was there any other land conveyed to your husband besides this northeast quarter? *A.* Not that I know of.

"*Q.* Did you ever make any other deed to any other person of land that Mr. Cook had placed in your husband's name? *A.* No.

"*Q.* You think you are certain about that, are you, Mrs. Wilcox? *A.* Well, I don't remember having signed any other deed, and I don't know of any other; I think I should remember it if I had; I remember that perfectly well."

The foregoing extracts disclose the substance of Mrs. Wilcox's evidence as to the execution of the alleged deed, and in connection therewith it may be as well to note, that the land records of Audrain county disclose the fact that on the twenty-third of September, 1858, she and her husband had made a deed to Samuel Pettingail, of New York, for land in section 25, township 53, range 7, in said county, which deed was recorded November 3, 1858.

The plaintiff testified that in the fall of 1862 he was residing in Rochester, New York, engaged in the nursery business; that in the fall Cook came to him

there from Sterling, Illinois, to buy nursery stock, and then proceeded as follows:

"*Q.* What, if any, trade was made between you and Cook at that time? *A.* After some considerable negotiations we agreed on the purchase.

"*Q.* Did you see in his possession at that time any deed for land in this county, and if so what, and state what the land was? *A.* I purchased a piece of land from him; he showed me an abstract showing chain of title down to Bruce Wilcox, and he showed me Bruce Wilcox and wife's deed to him. He had that deed.

"*Q.* What, if any, examination did you make of it? *A.* The trade was made and he gave me the deed which you have put in evidence.

"*Q.* When the trade was made he gave you the deed from W. Z. Cook to Hulda Anthony? *A.* Yes, sir; she was my mother, and he gave me the deed from Wilcox to Cook.

"*Q.* Did you examine the deed from Wilcox to Cook? *A.* Yes, sir; I examined both of the deeds to see if they agreed with the description in the abstract, and the description in the Wilcox deed agreed with the one Cook had in his possession.

"*Q.* Whose name was signed to that? *A.* Bruce Wilcox. The abstract exhibited the title in Bruce Wilcox, and this deed was signed by Bruce Wilcox.

"*Q.* Was it acknowledged? *A.* Yes, sir.

"*Q.* What did it have in it? *A.* It was a quit-claim deed. I examined it and thought it was sufficient to convey the property.

"*Q.* What was done with it? *A.* I saw it was not recorded and told Cook it was his business to have it recorded. He agreed to have it done, and I gave it to him for that purpose. Cook took it under agreement to send it out here and have it recorded."

Witness on cross-examination testified as follows: "*Q.* When did you first find out that he had not done so? *A.* A number of years afterwards; I think about eight years afterwards.

"*Q.* You found it out about 1870? *A.* Something like that.

"*Q.* How many times did you see William Z. Cook? *A.* He was at Rochester a number of days, perhaps weeks. I saw him nearly every day I suppose.

"*Q.* Did he have his wife with him? A. No, sir.

"*Q.* Did you and he have negotiations for a trade on hand before he got there? *A.* Yes, sir; he wished to purchase nursery stock.

"*Q.* And give you the land? *A.* I am not sure whether he wrote about the land before he came.

"*Q.* You had no trade consummated before he got there? *A.* No, sir.

"*Q.* That is the only trip he ever made to Rochester? *A.* I don't know.

"*Q.* He was there in '62, what time of year was it? *A.* In the fall.

"*Q.* Now it appears that this deed from William Z. Cook to Hulda Anthony was acknowledged in Whiteside county, Illinois. If there was no trade negotiated before he came how is it that that was done? *A.* I don't know." * * *

The foregoing is substantially all the evidence tending to prove the execution of the alleged quitclaim deed from Wilcox and wife to Cook; the petitioner then supplemented this evidence by introducing evidence tending to prove that at the time of the trial Cook was alive and resided in California, and was insane, and had been insane since February, 1889; that Woodward obtained the quitclaim deeds to him from Mrs. Wilcox and children without any consideration, by representing to them that in a former deed,

made by Wilcox and wife to some one (whose interest he represented) conveying the premises, a mistake was made in the description, and that to correct such supposed mistake was the only inducement or consideration for said deeds.

The defendants, Reed and Beal, introduced evidence tending to prove that Woodward paid the Wilcoxes $300 for their quitclaim deeds; that they purchased from Woodward in good faith paying full value for the lands, relying upon his title as it appeared upon the land records of the county, after having had the same examined by counsel learned in the law, who advised them that the title to the land was in him, and without any knowledge whatever of any deed having been made from Wilcox and wife to Cook. That while they knew that the plaintiff made a claim to the land before and at the time they bought, they did not suppose it rested upon any other basis than the title, if any, that appeared to be in him upon the land records of the county.

There was other evidence tending to prove that the land was known in the neighborhood as the Anthony land, and was so designated on a map of the county.

The court, upon this state of the evidence, found for the defendants that the plaintiff was not entitled to the relief sought by his petition, dismissed the same and rendered judgment against him for costs; from which he appeals to this court.

This is a case of the first impression with us. The act upon which it is based was first enacted in 1873, under the title of "An act to establish evidence of title to real property and to restore the records of the same, and to provide for the recording of deeds." This act, approved March 28, 1873 (Session Acts, p. 48), was carried bodily into the revision of 1879 as article 4 of

chapter 58. The title of the chapter being, "Of the perpetuation of testimony; establishing land boundaries; supplying records; establishing land titles;" and into the Revised Statutes of 1889 as article 4 of chapter 159. The title of the chapter being "*Testimony perpetuation of*," and the sub-title of the article "Establishing land titles."

The case in hand seems to have been tried below, and is argued here as if it was an action by the petitioner against Reed and Beal to try title. And from the general finding of the court dismissing the petition it is impossible to tell whether its action was predicated upon the conviction that the evidence of the petitioner *was insufficient* to prove the execution of the alleged lost deed from Wilcox and wife to Cook in 1862, or upon a finding that it *was sufficient* for that purpose, but that as against these two defendants such instrument was not valid under the registry act.

After a very careful consideration of the provisions of this act, in which it must be confessed the meaning of the legislature in many respects is not always made clearly apparent in unmistakable terms, we are of the opinion that the theory that a proceeding commenced under this act can be used as, or converted into, an action to try the title to real estate between conflicting claimants is a mistaken conception of its scope and purpose; the whole of which, it seems to us, is lucidly and tersely expressed in the title of the original act, to be "To establish evidence of title to real property and to restore the records of the same."

Without going into an analysis in detail of its several lengthy and verbose provisions, this conclusion would seem to flow from the consideration of the nature and object of the proceeding. It is confined to such persons as may claim an estate or interest in land

"whose deeds, mortgages or other written evidence of title or interest or the record thereof have been lost or destroyed." Any such person may institute the proceeding, whether in or out of possession, by filing a petition verified by affidavit in the circuit court of the county in which the land is situate, setting forth therein a description of the land, the nature and extent of his interèst or estate therein, a description of his lost deed, mortgage or other evidence of title, and the name of the person who executed the same and the interest or estate conveyed therein to the claimant; the manner in which his deed or other evidence of title was lost or destroyed, and praying the court to hear and make a record of such evidence as the petitioner may produce touching or concerning his alleged estate or interest in said lands. The petition is served by causing a notice to be published in some newspaper published in the county where the cause is pending, addressed *to all whom it may concern,* for four consecutive weeks, the last insertion to be four weeks before a regular term of said court, and if any person is in possession of the land by serving a copy of such notice upon him at least twenty days previous to said regular term subsequent to the publication of said notice.

At the next term of such court after the publication of such notice, the petitioner may submit such evidence or proof of title or interest to or in the lands described in the petition as he may be able, and concerning the loss or destruction of his deed or other evidence of title to said land, and any person who may claim an interest or estate adverse to that alleged in the petition, may appear and answer the petition and resist the claims of the petitioner, and may submit such evidence or proof of his estate or interest in the land as he may desire; nevertheless, if upon a final hearing the court shall find the allegations of the petition to be sub-

stantially proved it shall order a decree adjudging said petitioner to be seized of an interest and estate in the land according to the allegations and prayer of the petitioner.

In this connection it will be observed that the petitioner is to have his decree, whatever interest or estate the answering claimant may show in the land, unless his evidence shall have the effect of disproving the allegations of the petition; and when such decree is rendered it is made conclusive against all persons who may have appeared and answered or have been personally served with notice, and *prima facie* evidence against all other persons claiming the premises from the time of entering said decree, against whom it is also made conclusive (with a reservation to those under disability of a like time after their disabilities are removed) who do not within two years after the entry of the decree appear and file a motion to have the decree opened, when evidence touching such other persons' interest in the land may be heard and such decree modified according to the evidence; and, when a certified copy of such decree shall have been recorded in the office of the register of deeds of the county in which the land is situate, a certified copy thereof or of the record thereof may be read in evidence in all courts and judicial proceedings in this state. Now what shall such decree be conclusive evidence of? Surely the draughtsman could not have meant that it should be conclusive evidence that at the date of the decree the title to the land or to the interest or estate which he claimed therein was in the petitioner, but conclusive evidence of the facts alleged in his petition and which the court found to be true as to the execution, loss or destruction of the instrument under which he claimed and the interest thereby conveyed. To hold otherwise would be to hold that the legislature had, under the guise of an act ot perpetuate

testimony, in fact introduced a new and unheard-of action to try title to real estate by publication in favor of that class of citizens who may have had the misfortune to lose a muniment of their title to land, and of which they or those under whom they claim may or may not ever have been in possession. The profession would doubtless be astonished to learn that such was the case; and although the forms of expression used in some of the provisions of the act seem to give countenance to such a construction we do not believe that such was the intention of the legislature.

The ambiguity of the act in some measure seems to have grown out of the fact that the draughtsman, having particularly in mind the loss of a conveyance made directly to the petitioner, sometimes when speaking of the interest or estate in the land thereby conveyed, characterizes it absolutely as the estate, interest or title of the petitioner.

If our construction of this statute be correct, it follows that the court committed no error in striking out the allegations in the supplemental petition as to the title, if any, acquired by him from two of the children of Bruce Wilcox after this proceeding was commenced, but that it did commit error in dismissing the petition without making any, except a general, finding for the defendants.

Upon the pleadings and the legitimate evidence in the case (which from the peculiarity of the proceeding have been set out more at length than is our custom) the court should have made a finding setting out the facts found to be true touching the execution of the alleged deed and its loss; determined whether or not those facts were sufficient to prove the execution of the deed and its loss; and, if found to be sufficient, declared the estate or interest thereby conveyed; and if

found not to be sufficient to have so declared and then dismissed the bill. For this error the judgment will have to be reversed and the cause remanded to be proceeded with in accordance with the views herein expressed. All concur.