# MATTHEW W. THOMAS v. NORA E. SCOTT, Plaintiff in Error.

### In Banc, June 8, 1909.

1. **WITNESSES: Competency of Wife: Delivery of Deed: Husband Dead.** The husband or wife is a competent party to prove a contract constituting one the agent of the other. But where the testimony of the wife sought to be introduced was to the effect that she handed the deed to her husband and directed him, in the absence of the grantee, not to deliver it to the grantee, but to a third party, it is gravely doubted whether she was competent to so testify, the husband being dead; but the point is reserved, since the evidence *aliunde* clearly establishes the delivery of the deed to the grantee.

2. **POINT FIRST MADE ON APPEAL.** Points made in the appellate court for the first time will be disallowed.

Thomas v. Scott.

3. **SUIT TO ESTABLISH LOST DEED: Proper Plaintiff.** A grantee of the grantee named in the lost deed may maintain a suit to re-establish the deed, if he claims title thereunder. It is not the law that the suit can be maintained only by the grantee named in the lost deed.

4. ———: **Affidavit: By Third Party.** Under the inaccurately expressed statute (Sec. 4565, R. S. 1899), the petition in the suit to re-establish a lost deed may be sworn to by the grantee named in the deed, instead of by his grantee who is the petitioner. Construing the language of the statute fairly, it means that the agent of the plaintiff may make the affidavit.

5. ———: **Unconstitutionality of Statute: Title.** The constitutionality of the statute, headed in one article, "Testimony, Perpetuation Of," and in another, "Establishing Land Titles," in so far as it is a scheme to try and determine title to real estate, is of grave doubt, because the body of the act goes beyond the scope and purview of its title; but in a suit to re-establish a lost deed, where the judgment is carefully restricted to such findings as are pertinent to a re-establishment of the deed, the statute will not be held to be unconstitutional.

6. ———: **Estoppel: Destroyed by Consent.** If an unrecorded deed be destroyed for the honest purpose of re-investing title in the grantor, the grantee consenting to such destruction is estopped to re-establish it. But if such is not the purpose, he is not estopped. And where the grantee handed the deed to the grantor, telling her he had a good home with her, and that she should destroy it, but doubting her right and solicitous about the consequences of such destruction, she did not then destroy it, but afterwards for purposes of her own, namely, to keep the title from passing to the grantee's grandchildren, she did destroy it, the grantee is not estopped.

7. ———: **Fraud: Proof: Burden.** Where fraud in fact is charged in the answer plaintiff is not to be held to admit the charge for that he stood mute. So that where, in the suit to re-establish a destroyed deed, the answer charges that the whole affair, in making the deed, keeping it off of record and in finally destroying it by mutual consent, was a contrivance to defraud the creditors of the grantee, silence on the part of the plaintiff in the face of that charge is not an admission of guilt, there being no evidence to establish the charge.

**Error to DeKalb Circuit Court.**—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Fitch & Blair* for plaintiff in error.

(1)  In so far as article 4, chapter 59, Revised Statutes 1899, attempts to confer jurisdiction on the court to try, decree or determine title to real estate, it is void as violating section 28, article 4, Constitution of Missouri, 1875.  In re Goode, 3 Mo. App. 226; State v. Great Western Coffee and Tea Co., 171 Mo. 634.  (2)  Plaintiff was not the grantee in the deed which is sought to be established and therefore he has no right to bring this action in his own name for the establishment of a lost deed made to his grantor. Sec. 4565, R. S. 1899.  (3)  Plaintiff's petition was sworn to by F. Thomas Hainline and not by the petitioner.  Such affidavit does not confer jurisdiction on the court under Sec. 4565, R. S. 1899.  (4)  A deed must not only be signed and acknowledged by grantor, but must be delivered by him, before it constitutes a conveyance.  The burden of proving such delivery is on the party alleging it, where it is denied.  Tyler v. Hall, 106 Mo. 313.  (5)  The delivery must be with the intent on the part of the grantor to part with his title, and it must have been accepted by the grantee with the intent to take the title as indicated in the deed.  These two acts are essential to the complete delivery of a deed.  McNear v. Williamson, 166 Mo. 367; Bunn v. Stuart, 183 Mo. 383.  (6)  Mrs. Scott's testimony as to the agency of her husband should have been admitted.  Its exclusion was error. Long v. Martin, 152 Mo. 675; Ingerham v. Weatherman, 79 Mo. App. 484; Leete v. Bank, 115 Mo. 204; Orchard v. Collier, 171 Mo. 399.  (7)  The court failed to try the question of the delivery of the deed sought to be established.  McNear v. Williamson, 166 Mo. 367.  (8)  F. Thomas Hainline consented to the

221 Sup—18

destruction of the deed sought to be established, and with a view of revesting the title in grantor or of hindering and delaying his creditors. He should not be heard to show the contents of the deed and neither should his grantee be heard to show such contents. Sutton v. Jervis, 31 Ind. 265; Gurgis v. Van Gorder, 10 Mich. 523; Parker v. Cane, 4 Wis. 1. (9) Where the grantee either directs the destruction of an unrecorded deed or consents to its destruction, then such destruction divests his title by estopping him from proving the contents of such deed. Howard v. Huffman, 3 Head 562; Speer v. Speer, 7 Ind. 178; 4 Kent, Comm., 196; Farrar v. Farrar, 4 N. H. 191; Mussey v. Holt, 24 N. H. 248; Thompson v. Thompson, 9 Ind. 323. (10) Plaintiff has no right to show the contents of an unrecorded deed alleged to have been destroyed until he shows, first, its destruction, and, second, that such destruction occured in such a manner as to repel all inference of a fraudulent design in its destruction. Where it appears that the plaintiff grantor consented to the destruction of the deed or authorized it, the plaintiff will not be authorized to introduce secondary evidence. Martindale v. Follette, 1 N. H. 95; Newell v. Mayberry, 3 Leigh 250; Arrison v. Harmstead, 2 Bar. 191. (11) The ground of estoppel in such cases is based upon the fact that the grantee in the unrecorded deed has consented to its destruction and thus voluntarily destroyed the evidence of his title. Thompson v. Thompson, 9 Ind. 323; Potter v. Adams, 125 Mo. 118; Winfrey v. Gallatin, 72 Mo. App. 191. (12) None but creditors themselves, and those in privy with them, can avoid an instrument on the ground that it was made to defraud creditors. McLaughlin v. McLaughlin, 15 Mo. 249; Lamore v. Tyler, 88 Mo. 668; George v. Williamson, 26 Mo. 193. Neither the grantor in a fraudulent deed, his heirs, executors or assigns can maintain suit to set aside such deed. Roan v. Will, 93 Mo. 511.

*Hewitt & Hewitt* for defendant in error.

On an appeal in an equity suit the Supreme Court will defer to the finding of the trial court on the weight of the evidence, unless it is manifest that the court should have found otherwise. Judy v. Bank, 81 Mo. 404; Parke v. Thompson, 81 Mo. 565. On appeal in a chancery case, the findings of the chancellor on the facts will not be disturbed, unless clearly erroneous. Gill v. Ferris, 82 Mo. 156; King v. Isley, 116 Mo. 155; Barlow v. Elliott, 56 Mo. App. 374; Lins v. Lenhardt, 127 Mo. 271; New England Loan & Trust Co. v. Browne, 177 Mo. 422; Snell v. Harrison, 83 Mo. 651; Hartley v. Hartley, 143 Mo. 216.

LAMM, J.—Thomas held title to real estate under a warranty deed from F. Thomas Hainline. From a decree restoring a destroyed deed in his chain of title, defendant brings error. The action is under article four, chapter 59, Revised Statutes 1899—chapter 59 being under the caption, "Testimony, Perpetuation of," and article 4 under the subtitle, "Establishing Land Titles."

Early in the history of the case here it was contended that the title to real estate was not involved and that we had no jurisdiction. On a motion to transfer to the Kansas City Court of Appeals, that contention was disallowed In Banc by an opinion handed down. [Thomas v. Scott, 214 Mo. 430.] In that opinion a sufficient synopsis of the petition is given for our purpose (*q. v.*). It will do to say that the petition substantially complies with section 4565, Revised Statutes 1899, prescribing the averments requisite to a good pleading in the statutory action invoked.

The controversy is over thirty-seven acres of land in De Kalb county, *viz.,* the northwest quarter of the southeast quarter of section 36, township 58, range 30. The deed alleged to be destroyed was an unrecord-

ed quitclaim, of a date in March, 1896, from defendant and her then husband, Robert N. Hainline, to F. Thomas Hainline, the latter being in turn plaintiff's grantor under a warranty deed and defendant's, then, father-in-law.

On lodging his petition in the office of the circuit clerk, publication was made as provided in section 4566. Thereafter defendant (then named Hainline and widowed) entered her appearance and afterwards remarried and filed answer. The scope and tenor of that answer may be found sufficiently stated in Thomas v. Scott, 214 Mo. *supra*.

The testimony took a wide range. We shall not detail it. Certain admissions were made by the answer relating to the destroyed deed. Taking those, with the proofs put in, the following facts were established: On a certain day in March, 1896, the defendant, Nora, purchased the *locus* (with eighty acres of other land) at a foreclosure sale under a deed of trust executed by F. Thomas Hainline, and took a trustee's deed. Presently (within two or three days) she and her then husband quitclaimed the thirty-seven acres to him.

There is a question raised on the record on the delivery of the deed, but, under the proof in the light of the allegations of the answer, we think there is no question but there was delivery. There is also a question raised whether the deed expressed any consideration. The defendant testified there was none and that the blank in the deed intended to be filled by a consideration was not filled at all. But, there was satisfactory proof that the deed expressed a consideration of $1, and this phase of the case is not seriously argued in this court.

F. Thomas Hainline was an old man—a widower. We take it the few acres in dispute is his whole estate. The proof tended to show that he has lived on the land for a generation or more, paying taxes under a claim

of ownership, and at the time the deed was made was a member of defendant's family. Subsequently this family arrangement was ended—whether at peace or through infelicity is not clearly shown. It seems that when the foreclosure was pending a question arose whether he would borrow the money and pay off the mortgage debt or allow the sale to go. The conclusion reached was to take the latter course. The value of all the land, as compared to the amount of the mortgage debt, is not disclosed; but we conclude, and the chancellor doubtless concluded, that the equity of F. Thomas Hainline was equal to the value of the thirty-seven acres conveyed by the destroyed deed, and that the family arrangement contemplated that the daughter-in-law, Nora, should bid in all the lands covered by the deed of trust and quitclaim the *locus* to her father-in-law, and that in pursuance and consummation of that pre-existing understanding the quitclaim was made.

The testimony convinces us that the deed conveyed a fee simple estate. Inferentially the answer admits so much, but it avers that came about through a mistake in the scrivener. There was faint testimony that after its execution the deed was sometimes referred to as a "life time deed." There is some testimony that grantors intended to convey a life estate only. But there is more persuasive testimony to the contrary. On top of that, the conduct of the defendant in destroying the deed, more particularly set forth hereafter, speaks strongly against such theory, and a careful reading of the whole record shows there was no limitation on the estate conveyed, that Nora intended to convey the whole, and that her deed accomplished it.

Before suit and again after its inception, Nora tendered a quitclaim deed conveying a life estate to F. Thomas Hainline, which tenders he declined.

It is agreed on all sides that the deed was destroyed by defendant at a date not definitely fixed, but towards the end of 1896 or in the spring of 1897.

Other facts appear with points ruled.

I. The first husband of Nora, Robert N. Hainline, having died, she at the time of the trial had intermarried with one Scott, a widower whose first wife was a daughter of F. Thomas Hainline. When Nora was testifying her counsel sought to prove by her that when the deed was handed by her to Robert, her husband, she, in the absence of the grantee, instructed her husband not to deliver it to the grantee but to a third party. The testimony was excluded, exception was taken and the ruling is assigned for error.

That the wife or husband is a competent party to prove a contract constituting one the agent of the other, is accepted doctrine. In this case, however, the husband was dead. The contract sought to be established related to the delivery of the deed. Under the circumstances, the existence of the deed, not as a mere scroll but as a deed, being at issue and on trial, and the husband dead, we greatly doubt whether she was competent to prove the contract with him. But the point may be reserved, because, as said, it is clearly shown *aliunde* that the deed was delivered, was treated by her as delivered and as an operative conveyance for whatever it was worth. Not only so, but after the ruling complained of she was allowed to testify that she never authorized her husband to deliver the deed to the grantee. Moreover, her testimony was to the effect that she knew what her husband was going to do with it; that she never asked him for it; that she knew what he did do with it, and learned two or three days afterwards that the grantee had it—of which she never complained. In the light of such facts the exclusion of the offered evidence, if it were held competent, could not constitute reversible error as affecting the merits.

The point is ruled against defendant.

II.   Error is assigned in that (not plaintiff, but) F. Thomas Hainline, was grantee in the destroyed deed and therefore plaintiff, holding under a later conveyance, could not bring the action in his own name.   Another assignment is that the petition was sworn to by F. Thomas Hainline and not by the petitioner.   Neither point was made in the trial court.   Both appear in this court for the first time.   They should be disallowed on that ground if on no other.

But, waiving that view, we think them without merit.   Counsel do not reason them and, being well equipped to reason them, we may assume they cannot be reasoned.

The statute says (section 4565): "Said petition shall be verified by the affidavit of the petitioner or petitioners, or by the affidavit of some person petitioning in his, her or their behalf."   The words are used with inexactness and thrown together loosely.   We have no call to discern all that was in the mind of the draftsman, nor in the minds of the lawmakers.   But construing the language fairly, we shall assume the meaning is that an agent of the petitioner may make the affidavit.   In reason what could be meant by saying that someone petitioning for the petitioner may make the affidavit, if not that someone acting for the petitioner may do so?

Nor is there anything in the words of the statute requiring such narrow construction as to preclude everyone but the grantee in the lost or destroyed deed suing to re-establish it.   The grantee may be dead, or may have long since parted with his title.   He may be insolvent or indifferent and care not a fig whether the deed be re-established or not.   One holding title under mesne conveyances from him, as in this instance, may have an estate in jeopardy because of the loss or destruction of the deed.   Shall we deal with the law-

makers on the theory that they did not hold the true owner of the title in mind when writing the law, but were amusing themselves by limiting the benefits of the act to some remote grantee in the lost or destroyed deed?

The point is ruled against defendant.

III.   On the theory that the statute under which the suit is brought is at root a scheme to try and determine title to real estate, it is claimed by defendant's counsel that the act is unconstitutional, because, when passed, no such purpose was within the purview of its title.   The constitutionality of the statute was not raised below, but, ignoring that view of it, we think the point proceeds somewhat on a misapprehension. Speaking broadly, the statute is directed to the perpetuation of the evidence establishing land titles, that is, the establishment of lost or destroyed deeds as muniments of title.   It involves title to real estate to the extent of giving us jurisdiction, as ruled (Thomas v. Scott, *supra*), but only in so far as the establishment of the deed necessarily involves it—no further.   We have construed the statute to mean that a court, in establishing a lost or destroyed deed, shall simply declare the execution, loss or destruction of the instrument under which the petitioner claims and the interest thereby conveyed.   This would necessarily involve a description of the lost or destroyed instrument whether quitclaim, warranty, mortgage, etc., the names of the grantor and grantee, the estate or interest conveyed by the deed, the date of the execution of the instrument as near as may be, and might appropriately include the manner of its loss or destruction, if shown.   [Anthony v. Beal, 111 Mo. 637; Thomas v. Scott, *supra*.] The statute apparently goes beyond those requirements and, in that regard, has been criticised by this court and held void in Anthony v. Beal, *supra*.   The unconstitutionality of the statute, because the body of the

act goes beyond the scope and purview of its title, was considered in the Anthony case. No one can arise from the perusal of the law without the abiding conviction that it is "fearfully and wonderfully made"—ambiguous, verbose in language, incongruous in its provisions—and no one can read the Anthony case without seeing that the statute was only saved from utter judicial condemnation because (by liberal construction) some grains of wheat were found in its bushel of chaff.

The judgment in this case is carefully restricted to such findings as come within the ruling of the Anthony case.

The point is ruled against defendant.

IV. As said, the record is conclusive on the fact that a deed was executed, was not recorded and was destroyed; so, it is certain that it perished by the hand of defendant. There was testimony from which the court could have found that defendant wrongfully possessed herself of it by taking it surreptitiously from the trunk of F. Thomas Hainline and destroyed it without his consent. There was testimony from which the court could have found that he, some months after its execution, handed it to defendant and told her to destroy it. The decree as originally written found that the deed was destroyed without "the consent of the said F. Thomas Hainline, the grantee therein." Such decree was entered on February 10, 1905. Subsequently, on the 14th of October of that year, a motion was filed for a *nunc pro tunc* entry to correct the decree in the particular aforesaid, because of misprision of the clerk. All parties appeared to that motion and by consent the decree was altered so as to read: "But that the destruction thereof was with the consent of the said F. Thomas Hainline and the said Nora E. Hainline" (now Scott)—all of which appears by the abstract. The court found that the destruction of the deed was not for the purpose of revesting title in the

grantors or either of them and the decree makes no finding whatever as to the purpose to be subserved by its destruction.

We do not understand counsel to argue that a title vested by a deed duly executed can be revested by such a chimney-corner short-cut as the mere destruction of a deed.

As we grasp their position it is: *First.* That the testimony shows and the court should have found that the deed was destroyed for the purpose of revesting title in Nora. In that view they argue that 'while the destruction of the deed did not technically revest the title, yet that estoppel arises and that the deed cannot be re-established. *Second.* That if such be not the case then the court should have found that the whole affair from start to finish, in making the deed, keeping it off the record and finally destroying it, was a contrivance to defraud the creditors of F. Thomas Hainline. That the present plaintiff is his nephew and took with notice of the fraud. That, if not taking with actual notice, he at least holds under a quitclaim deed and his title is subject to all infirmities arising from such scheme. It is on such premise counsel argue that plaintiff does not come into a court of equity with clean hands and is entitled to no relief. Moreover, it is suggested that, being charged with fraud in the answer, plaintiff stood mute. Therefore, they say, such silence is tantamount to an admission of guilt.

Is there soundness in any of these contentions? We think not on this record. This, because:

(a) It is an inadvertent mistake of fact to say that plaintiff holds under a quitclaim deed from F. Thomas Hainline. To ' the contrary the abstracted record shows that he holds under a warranty, subject only to a mortgage put on the land by defendant subsequently.

(b)   Nor was plaintiff required to go upon the stand and disprove the charges of fraud in the answer. This for the very good reason that there is no testimony establishing those charges. It would be droll law that required a litigant to disprove a charge of fraud neither directly nor constructively proved by the party making it and carrying the burden of proof. The rule invoked by defendant must be restricted to those cases where fraud in law or in fact is charged and where the testimony tends to prove it. In such case silence is of judicial significance. But this is not such case.

(c)   The court below did not find that the deed was made or destroyed to hinder and delay the creditors of F. Thomas Hainline. Nor could he have well done so. No creditor is complaining here. No creditor testified to any unpaid debt due him from the old man. None is admitted. No such debts were shown to be merged in any unpaid judgment. There was some hearsay, some conclusions indulged in by gossip among the neighbors, some suspicions in relation to the transaction, but there is no evidence worth while that F. Thomas Hainline and Nora, the defendant, were guilty of a conspiracy to hinder, delay or otherwise defraud any creditor. Moreover, we do not find that defendant planted herself seriously on any such ground at the trial. Her main position was that the deed was never delivered, that it was without consideration, that (if delivered and if it had a consideration) it conveyed only a life estate, and she tendered a conveyance of such life estate on the theory she was willing to re-establish it. To this she added the theory of destruction by consent to revest title and consequent estoppel as a bar to re-establishment.

(d)   If an unrecorded deed be destroyed for the honest purpose of revesting title in the grantee, the rule of law is that one consenting to such destruction is estopped to re-establish the deed. [Potter v. Ad-

ams, 125 Mo. 118.] But the learned chancellor, who met the witnesses face to face and who heard them testify, found that such was not the purpose and there is nothing in this record leading us to conclude his finding was error in that behalf.

(e) There are some peculiar things about the destruction of this deed. The present husband of defendant, then the son-in-law of F. Thomas Hainline, once held a conveyance from him for this very property, conditioned on his support of the old man, expressing a small consideration in cash and providing that, if he failed to support him, the deed was void as a conveyance out and out, but should stand as a lien for the alleged cash part of purchase price. That deed was subject to the deed of trust under which the defendant, Nora, bought. Of course on foreclosure it became, for the purposes of the law, a mere last-year's birds' nest. According to defendant's testimony, F. Thomas Hainline handed her the deed (sought to be re-established) telling her that he had a good home with her and that she should destroy the deed. But she also testified in effect that doubting her right and solicitous about the consequences of such destruction, she did not destroy it. Presently, however, her present husband, John Scott (then the husband of her sister-in-law), and F. Thomas Hainline were overheard by her talking in a side room at her house about a reconveyance of the property to John Scott. It was then and for purposes of her own that she destroyed the deed, *viz.*, to prevent such conveyance. By way of anticipation, the eyes of the sons-in-law and daughters-in-law seem to have been fastened on the little. home of an old man, soon to give up the ghost, and the hopes and desires of those people crossed each other. It would seem that a conveyance by F. Thomas Hainline to said Scott or to him and his children, the grandchildren of the old man, was either impending or Nora thought it was. F. Thomas Hainline as the

result of that interview (so overheard by her) presently asked her, so she says, whether she had destroyed the deed. She told him in reply that she had. This admittedly false statement, used to effectuate her own purpose, brought an end to the Scott negotiations. The subsequent destruction of it was not carrying out the wish of the grantee but trying to make a semblance of truth out of her falsehood. To this may be added that, becoming aware of the wish of the grantee to recall the deed from her, she put it out of his power to do so. There is testimony tending to show that she told sundry persons afterwards that she had destroyed the deed to prevent others getting the land.

In the light of such a record, we conclude the deed was destroyed not in pursuance of grantee's request or to revest title, but mainly to prevent the other children and grandchildren of F. Thomas Hainline getting or sharing in the bit of land. In this view of it, the chancellor should have found, not that the destruction of the deed was made with the consent of the grantee, but that he had handed it to her to be destroyed, that she did not destroy it at his request and for his purpose but finally destroyed it for purposes of her own and to prevent an impending transfer of title to someone else. This idea, however, is sufficiently encompassed by the decree finding that the destruction of the deed "was not for the purpose of reinvesting title" in Nora.

Other questions are raised, but none of them are material on the merits.

The premises considered, the decree did equity. Accordingly, it is affirmed. All concur.