ALWIN PAULI, as Administrator, etc., of ESTHER M. PAULI, Deceased, ALWIN PAULI, as Administrator, etc., of ESTHER M. PAULI (2D), Deceased, MARGARET PAULI, an Infant, by ALWIN PAULI, Her Guardian ad Litem, and ALWIN PAULI, Plaintiffs, v. ST. PAUL MERCURY INDEMNITY COMPANY, Defendant.

Supreme Court, Erie County, April 28, 1938.

*Harold Tillou,* for the plaintiffs.

*Saperston, McNaughton & Saperston,* for the defendant.

VAUGHAN, J.   It appears either by stipulation or from the evidence offered upon the trial that the defendant on June 22, 1936, sold and delivered to one Kenneth Carncross a policy contract of liability and property damage insurance insuring the said Carncross against liability for bodily injury and property damage caused by the operation of his automobile while being used for "business and pleasure."   It further appears that during the coverage period the insured, Kenneth Carncross, was involved in an automobile accident resulting in the fatal injury to Esther M. Pauli, to her daughter, Esther M. Pauli (2d), and serious personal injury to another daughter, Margaret Pauli.

Actions were thereafter brought against Kenneth Carncross to recover pecuniary damages growing out of the deaths of Esther M. Pauli and Esther M. Pauli (2d) and to recover damages for personal injuries sustained by Margaret Pauli.   The actions were defended by the present defendant insurance company under a full reservation of rights.   The trials resulted in judgments aggregating $32,500 which were later reduced by the Appellate Division to $22,500 and as so reduced affirmed by the Court of Appeals.   Executions were thereafter issued and returned unsatisfied.

The present action was thereafter brought under section 109 of the Insurance Law to recover the limits of liability named in said policy, viz., $5,000 to $10,000.

The defendant contests liability on the ground that (a) the policy does not cover the use to which the Carncross car was being put at the time of the accident, and (b) the policy is void because of certain alleged false and fraudulent representations as to the ownership of the car and any incumbrances thereon.

In determining the question of liability of the defendant it should be borne in mind that the policy was written upon a combination policy form and various of the provisions in said blank apply only to coverages (therein designated as A and B) for bodily injury and property damage while others apply to the remaining coverages (therein designated as C, D, E, F, G, H and J) and still other provisions apparently apply to all coverages.   In this case, the only coverages written were A and B.

The policy provides as respects bodily injury liability: "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Likewise, the policy provides as respects property liability: "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

In the declarations attached to and forming a part of said policy, it is stated: "The purposes for which the automobile is to be used are: 'Business and pleasure,'" and by item 6 of said policy such purposes are defined as follows: "(a) The term 'pleasure and business' is defined as personal, pleasure, family and business use."

It appears that Kenneth Carncross was a volunteer fireman in one of the Kenmore fire districts; that the pumper in that district was out of repair and that on the occasion of the accident Carncross was preceding a fire truck from another district down Colvin avenue in his own car, piloting or leading the fire truck to a fire.

It is the contention of the defendant that such use was not within the definition of "business and pleasure" as defined in said policy. With such contention I cannot agree. The definition in the policy is broad and sufficiently inclusive to cover the use of the automobile at the time of the accident. Although a volunteer fireman, Carncross' use of his automobile, even in his duties as such a fireman, was nevertheless a personal use. Appleman in his recent work (1938) on Automobile Liability Insurance (at p. 31) states: "If the endorsement is for 'pleasure and business' purposes all uses are included, except where the automobile becomes converted into a regular commercial vehicle. Certainly, use by a physician or an attorney upon professional cases is covered — or the transportation of tools by a carpenter or plumber. It is the intention of the framers to permit a broad and liberal construction of these definitions, subject, of course, to the exclusions of the policy which will be examined later."

The use by Mr. Carncross of his automobile at the time of the accident was not excluded under any provision of the policy.

The policy in question is written upon a combination policy form described as an "Automobile Policy — Combination Form." As the name indicates, the policy form combines the ordinary automobile liability policy for bodily injury and property damage with policies of collision insurance and fire and theft insurance.

By reason of the restrictions found in sections 70, 110 and 150 of the Insurance Law, two insuring companies appear upon the policy form, the defendant company being the insuring company for coverages A and B, and the Mercury Insurance Company being the insuring company for the balance of the coverages set forth in the

policy, but none of said coverages being insured thereunder, said Mercury Insurance Company had no liability thereunder.

The policy recites: " The limit of each company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy *having reference thereto*." (Italics mine.)

Item 4 of the declarations entitled " Description of the automobile and the facts respecting its purchase by Named Insured " is completed by a description of the automobile as to year, model, trade name, type of body and serial and motor numbers and model but is silent as to factory list price, actual cost, including equipment, year and month purchased, new or used and as to question, is automobile fully paid for.

The failure to obtain the omitted information suggests its immateriality as respects coverage for bodily injury and property damage.

Other items pertinent to the inquiry under consideration are: " 5. State amount of lien, mortgage or other encumbrance, if any — None." And " 8. The Named Insured is the sole owner of the automobile except as herein stated: No exceptions."

It appears from the evidence that the insured Carncross purchased his automobile under a conditional sales agreement and that there was due and owing on the same at the time of the issuance of the policy the sum of $500.

It is the contention of the defendant, in view of such evidence, that the statements in the declarations were not true and that they constituted misrepresentations and that it is relieved of liability under the policy.

In support of its contention the defendant directs attention to various policy provisions:

" Misrepresentation and Fraud. This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

It appears without dispute from the evidence of both Kenneth Carncross, the insured, and William J. Brogan, the agent who solicited and brokered the insurance in question, that the questions appearing under items 5 and 8 were not asked the insured and that the answers thereto were, at the time of the writing of the policy, voluntarily inserted by the defendant company without suggestion from either the insured or the soliciting broker.

Defendant urges, however, that under the provision of the policy designated " Declarations," which reads: " By the acceptance of this policy the named insured agrees that the statements in

the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance," such statements in the declarations were the insured's representations.

Whether the representations were under the circumstances of this case misrepresentations becomes important in determining defendant's liability only in the event they are material to the risk assumed by the defendant.

This is not a policy of insurance against loss of the automobile or damage thereto. The policy is an indemnity contract against liability of the insured for damages on account of bodily injury and property damage resulting directly from " the ownership, maintenance or use " of the described automobile.

I am unable to see how the declarations as to incumbrances on, and ownership of, the automobile are in any manner misrepresentations affecting the risk of bodily injury and property damage assumed by the defendant, nor do I find that there has been any fraud or attempted fraud on the part of the insured.

It appears not alone from the testimony of the soliciting broker but also from the testimony of agents for various insurance companies that whether the automobile is paid for or incumbered is not material or taken into consideration in determining the question of the issuance of bodily injury and property damage insurance.

In *Kuntz* v. *Spence* ([Tex. Civ. App.] 48 S. W. [2d] 413) the facts are not unlike those in the case at bar. The action was brought to recover damages for the death of appellee's son, who, while riding as a passenger in appellant's automobile, was thrown therefrom by the sudden, negligent stopping thereof. The appellant contended that since the statements contained in the policy that the automobile was fully paid for and that there was no lien or incumbrance against it were untrue, the entire policy was void. After referring to various provisions of the policy under the headings " Misrepresentation and Fraud," " Lien or Mortgage," and " Title and Ownership," which are in substance the same as contained in the policy in question, the court said: " It is thus apparent that the untrue statement contained in the policy that the car was unincumbered or that Mr. Kuntz' title thereto was in any sense unconditional was material only to the issue of liability for loss or damage to the car; it being a familiar rule that general terms of a contract will be controlled in their application by specific provisions. It is further apparent that at all events, whether or not the automobile was incumbered at the time the policy was taken out and at the time the accident occurred, was not material to the risk

incurred by the issuance of the policy against the bodily injuries, such as provided for in paragraph A of the policy and on which plaintiff's suit is based, even though it could be said that the policy should be construed as warranting the truth of the statement therein contained, to the effect that the automobile was unincumbered."

Defendant urges, however, that whether the statements contained in items 5 and 8 of the declarations are misrepresentations material to the risk or not, the policy is specific in denying coverage if the automobile is subject to any lien, mortgage or other incumbrance, and calls attention in that regard to that portion of the policy under the heading, " Exclusions " which reads in part as follows: " This policy does not cover (e) * * * (5) While subject to any lien, mortgage or other encumbrances not specifically described herein."

Having in mind that the form upon which the policy in question is written makes provision for two separate and distinct types of policies, it is pertinent to inquire to which of the two types of policies the above provision refers. The policy written covers liability for bodily injury and property damage arising out of the " ownership, maintenance or use " of the automobile described in the policy. The exclusion above referred to in my opinion only refers to a policy covering collision, fire or theft and has no relationship to liability imposed by reason of " ownership, maintenance or use."

Further evidence of this fact is found from a reading of the " Specific Conditions Applicable Only to Coverages A and B " which insure against bodily injury and property damage, and in which no mention is made of " Lien or Encumbrance " applying to such type of coverage.

As against the absence of such language relative to coverages A and B, we find under " Specific Conditions Applicable only to Coverages C, D, E, F, G, H and J " (coverages C, D and F being for fire, theft and collision), specific mention of " Lien and Encumbrance " in the following language: " Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage or other encumbrance specifically set forth and described in item 5 of the declarations, this company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, mortgage, or other encumbrance."

In my opinion the language of the policy itself establishes beyond doubt that the fact that the automobile of the insured was incumbered has no bearing on the validity of the policy written by the defendant.

Another provision of the policy to which defendant calls attention is " Title and Ownership," which reads: " Except as to any lien, mortgage or other encumbrance specifically set forth and described

in item 5 of the declarations, this policy shall be void, unless otherwise provided by agreement in writing added hereto, if the interest of the insured in the subject of this insurance be or become other than unconditional and sole lawful ownership."

Such provision is by the very terms of the policy made applicable to coverages C, D, E, F, G, H and J, and does not apply to the type of coverage issued by the defendant.

The statement set forth in item 8 is, therefore, immaterial in so far as the validity of the policy in question is involved.

Under an automobile liability policy indemnifying the insured against liability imposed by reason of the ownership, maintenance or use of the automobile, title to the automobile, either legal or equitable, is not necessary. All that is necessary is legal possession or responsibility for the use thereof.

Blashfield in his work "Cyclopedia of Automobile Law and Practice" (Vol. 6, § 3873) says:

"The rule requiring possession by the insured of an insurable interest in the property forming the subject matter of the insurance, which prevails generally in casualty insurance, is not applicable to liability indemnity policies.

"The character of the insurance is quite different from insurance, against injury or loss, of the property insured by fire, theft, collision, or the like, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and the right of the insured to recover does not depend upon his being the holder, in fact, of either a legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable."

The policy in question also contains the usual clause including as an insured thereunder as respects said coverage and liability arising out of ownership, maintenance or use of said automobile "any person while using the automobile and any person or organization legally responsible for the use thereof," provided such use was with the permission of the named insured. Obviously, the defendant recognized that as respects its liability, it was immaterial whether the person causing the accident by such use of the automobile had any claim or title thereto or not.

It follows that the plaintiff is entitled to judgment in the sum of $10,647.21, together with interest thereon from November 25, 1936, to date of entry of judgment. Submit findings in accordance with this decision.