PATRICIA GRAFTON, Respondent, v. WILEY E. McGUIRE, Administrator of the Estate of RALPH McGUIRE, Deceased, Defendant, UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Garnishee, Appellant, No. 42362—245 S. W. (2d) 69.

Division Two, January 14, 1952.

*Paul C. Sprinkle, William F. Knowles, Roy F. Carter* and *Sprinkle, Knowles & Carter* for garnishee appellant.

*Lawrence R. Brown, Jess W. Van Ert* and *Stinson, Mag, Thomson, McEvers & Fizzell* for respondent.

WESTHUES, C.—Patricia Grafton obtained a judgment in the sum of $20,000 against the defendant, Wiley E. McGuire, as administrator of the estate of his brother, Ralph McGuire, deceased. The cause arose out of a collision of two cars, one of which was at the time driven by the deceased, Ralph McGuire. Patricia Grafton was seriously injured as a result of the collision. An execution was issued to collect the judgment and appellant, United States Fidelity and Guaranty Company, was served with garnishment proceedings on the theory that a policy of liability insurance issued by it covered the car driven by McGuire.

In the answer of the garnishee to the interrogatories, liability was denied on the theory that the policy did not cover the car. The garnishee briefed that point on this appeal. It also briefed the question of whether plaintiff Grafton had by a contract of settlement with the National Surety Corporation received complete satisfaction of her damages. The National Surety Corporation had issued a policy covering the car and this company compromised with all persons injured as a result of the collision in question. The trial court held the policy covered the car and credited the judgment with $6,250, the amount plaintiff received from the National Surety Corporation, and entered judgment for plaintiff for $13,750 against the Fidelity and Guaranty Company. An appeal was taken to this court from the judgment entered.

The facts developed at the trial were as follows: Wiley E. McGuire and Ralph McGuire, the deceased, were brothers. Ralph had served in the armed forces and had been discharged in August, 1946. Thereafter he lived with his brother Wiley. In August, 1947, they purchased a 1937 Nash automobile, title to which was placed in the name of Ralph. The party from whom the car was purchased testified that the two McGuires bought the car and each contributed to the down payment. A clerk of the company which financed the car testified that Wiley made most of the payments as they came due. On June 1, 1948, the two brothers entered into a partnership whereby they operated a garage for the repair of automobiles. During the first part of September, 1948, Milton Wegner, a countersigning agent of the United States Fidelity and Guaranty Company, garnishee herein, called on Wiley McGuire for the purpose of issuing a liability policy covering the garage business of the McGuire brothers. The Nash car was then and continued to be the only car used in the garage business. It was maintained at the expense of the partnership. On September 8, 1948, Wiley McGuire and garnishee's agent, Wegner, came to an agreement and Wegner informed Wiley that the policy was in force as of that date. It is not denied that Wegner had au-

thority to bind the company in that manner. The policy which was later issued was dated September 8, 1848, and was signed by Wegner on behalf of the garnishee. Wiley McGuire testified that Wegner informed him that the policy covered the Nash car while used in the garage business and also while used for pleasure purposes by Wiley, his wife, or Ralph. Wiley testified that the policy was not delivered until after September 26, 1948, the date of the collision giving rise to this lawsuit. At the same time that the liability policy was contracted for, Wegner also sold the McGuires a fire and theft policy on the car. Wegner testified for the garnishee. He admitted that Wiley informed him the title to the Nash car stood in Ralph McGuire's name.

██ The contention of the garnishee that the policy did not cover the car is based solely on the theory that since the car was registered in Ralph's name, he was the owner of the car within the meaning of the policy and, therefore, it was not the property of ██ the partnership. The clauses of the policy governing the question read as follows:

## "DEFINITION OF OPERATIONS

"Division 1. Automobile Dealer or Repair Shop

"The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment, thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and *also for pleasure use*." (Emphasis ours)

## "EXCLUSIONS

"This does not apply:

"(b) under Division 1 of the Definition of Operations, to any automobile owned or hired by the Insured and used as a haul-away for the conveyance of automobiles or used for wholesale or retail delivery of fuel oil or the wholesale delivery of gasoline; or to the ownership, maintenance or use for pleasure purposes of any automobile not owned by or in charge of the Named Insured for use principally in such operations;"

The policy was issued in the name of "R. K. McGuire & W. E. McGuire DBA McGuire's Garage." "R. K." were the initials of Ralph McGuire and "W. E." those of Wiley McGuire.

The collision in question occurred on September 26, 1948, at about 1:00 A. M., while Ralph McGuire was driving the car for pleasure use.

It seems to us that the provisions of the policy plainly cover the car in question and that the exclusion clause "or to the ownership, maintenance or use for pleasure purposes of any automobile not owned by or in charge of the Named Insured for use principally in such operations;" does not apply to the car in question. The Nash car was in fact owned by the partnership and its principal use was in the garage business of the partnership.

There was no deception on the part of the insured. The counter-signing agent of the insurer was informed of the true facts, that is, that the Nash car was owned by the two brothers constituting the partnership; that the title was registered in one of the brothers and that the car was being used in the partnership business. Under the law as applied to liability insurance in such cases, the policy clearly covered the Nash car in question. Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, Part 1, page 537, Section 3873, and page 652, Section 3962. See also 44 C. J. S. 1165, Section 297a which reads:

"A contract or policy of insurance should be given a liberal construction so as to uphold it and accomplish the purpose or object for which it is made, rather than a strict, technical construction which may defeat such purpose or object."

See Wellston Trust Co. v. American Surety Co., Mo. App., 14 S. W. (2d) 23, l. c. 28 (8, 9). The insurance company had full knowledge of all the facts having a bearing on the risk insured before the policy was issued and it is now estopped to deny liability. Fulbright v. Phoenix Insurance Co. of Hartford, 329 Mo. 207, 44 S. W. (2d) 115, l. c. 119 (4); Virginia Auto Mutual Insurance Co. v. Brillhart, 187 Va. 336, 46 S. E. (2d) 377, l. c. 381 (4-6); Golden Gate Motor Transport Co. v. Great American Indemnity Co., (Cal.) 58 P. (2d) 374, l. c. 378 (8-10).

As stated above, the garnishee in its answer to the interrogatories denied liability on the ground that the policy did not cover the Nash car. Not one word do we find in the answer thereto with reference to the point briefed by garnishee that "The Court erred in entering judgment against the garnishee because under the contract of settlement between the National Surety Corporation, the plaintiff and the defendant herein, there was a complete satisfaction of the plaintiff's damage."

During the trial the garnishee offered in evidence an exhibit marked "B" and made the following statement with the offer: "The Garnishee offers in evidence its Exhibit B, which speaks for itself, and is a proceeding in the Probate Court of Jackson County, Missouri, with respect to the handling of this particular suit and other suits which are pending, and its significance will be called to the attention of the Court by memorandum." Plaintiff's counsel

objected to the offer "for the reason it is outside of the pleaded issues in the case." The trial court overruled the objection.

In Exhibit B is included all of the proceedings in the Probate Court concerning the settlement made with the National Surety Corporation including the purported compromise contract. We hold the issue of whether the contract of settlement with the National Surety Corporation constituted full satisfaction of plaintiff's damages was not before the trial court and therefore not an issue on this appeal.

In the case of Nulsen v. National Pigments and Chemical Co., 346 Mo. 1246, 145 S. W. (2d) 410, l. c. 413 (1), Division I of this court said: "In our opinion it is unnecessary for us to determine whether or not the contingent liability of defendant to DeLore sufficiently appeared from the audit of December 31, 1922, or whether plaintiff under the terms of his contract of May 14, 1923, with the National Lead Company, assumed and agreed to pay such liability. The defense here urged by defendant was neither presented to, nor passed upon by, the trial court. It may not be presented here. Thomas v. Scott, 221 Mo. 271, 279, 119 S. W. 1098." That language may well be applied to this case. A claim that a plaintiff has received full satisfaction by a contract with another insurance company is certainly an affirmative defense and must be pleaded. Section 509.090, R. S. 1949. Since it was not pleaded it is not before us for review.

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.