**MILBANK MUTUAL INSURANCE COMPANY, a Corporation, Appellant,**

v.

**Peter M. SCHMIDT et al., Appellees.**

**No. 16985.**

United States Court of Appeals
Eighth Circuit.

June 30, 1962.

Clifford Jansonius, of Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, N. D., for appellant.

Robert Vogel, of Vogel, Ulmer & Bair, Mandan, N. D., for appellees.

Before VOGEL, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Prior to the commencement of the instant action, Genevieve Vandenburg and Orrellis Butler, Administrator, were awarded judgments in the total amount of $34,844 against Peter M. Schmidt for damages occasioned by his negligent operation of an automobile on April 8, 1960. Thereafter, Schmidt, Vandenburg and Butler brought suit against Milbank Mutual Insurance Company, hereinafter referred to as defendant. Judgment was rendered against defendant and in favor of Schmidt, Vandenburg and Butler for $12,754.16, the limits contained in the policy of public liability insurance issued by defendant to Schmidt. In addition, Schmidt was awarded judgment against defendant for $22,090.64, the amount by which the earlier recovery against Schmidt exceeded the policy limits. The defendant is here appealing from both of these judgments. The judgments were based upon a jury verdict finding the policy in force at the time of the accident and allowing recovery to the extent of the policy limits and upon a special verdict of the jury finding defendant acted in bad faith in refusing to accept the offer of Genevieve Vandenburg and Orrellis Butler, Administrator, to settle their claims within the policy limits.

Defendant at the close of all the evidence by motion for directed verdict and again after verdict by motion for judgment n. o. v. raised the issue of the sufficiency of the evidence to support the verdict and the resulting judgments. Defendant by its motion urged that plaintiffs have failed to establish that defendant had any insurance obligation to plaintiffs in effect at the time of the accident, in that any policy rights Schmidt had acquired were obtained through fraudulent misrepresentations and concealments in

his applications for insurance. Defendant also urged that there is no substantial evidence to support a finding of bad faith on its part in failing to accept settlement offers within the policy limits. Such motions were overruled. Defendant's appeal is based entirely upon the challenges made to the sufficiency of the evidence to support the verdict and judgments.

Jurisdiction is based upon diversity of citizenship. Plaintiffs are citizens of North Dakota. Defendant is incorporated under the laws of South Dakota with its principal place of business at Milbank, South Dakota. The jurisdictional amount is present. The parties are in agreement that this case must be determined upon the basis of North Dakota law.

We shall first consider the insurance coverage issue. It is undisputed that Schmidt on March 18, 1960, made applications for liability insurance upon each of his three owned motor vehicles, including the vehicle involved in this litigation, with the defendant through its Bergquist & Walker Agency at Bismarck, North Dakota. Schmidt paid a portion of the premium with the understanding that he would be billed for the balance of premium due. The applications were promptly sent to defendant. Defendant's underwriter, Stensland, testified that the applications came to his attention on March 23, 1960, when he reviewed them and sent them on for further processing. Defendant issued a policy pursuant to the applications, showing its starting date to be the date of the applications, and mailed the policy to Bergquist & Walker, who received it about April 1, but did not deliver the policy to Schmidt prior to the April 8 accident. No reason for nondelivery of the policy is satisfactorily shown. The agents testified that they usually told applicants the policies were effective from the date of application and that the customer "had every reason to believe he's covered from that time on".

On March 24, 1960, Schmidt reported a minor accident to Bergquist who said, "We'll take care of it; you don't have to worry about it." Bergquist wrote relative to such accident referring to Schmidt as "my insured".

Defendant claims that there is no insurance coverage because the issuance of the policy was induced by fraudulent representation and concealments in the applications, namely, that the insured had represented he had no physical impairments when in fact he had one glass eye; that he represented that he had not been refused insurance or cancelled out, when he had in fact been refused insurance by a number of companies, and that he represented that he had had no prior accident when in fact a member of his family, using his car, had had a minor accident. Schmidt denies he was guilty of any fraudulent representations or concealment and states that he fully answered all questions which were asked him. We shall not discuss the evidence bearing upon the fraud issue as we are satisfied that defendant had failed, in event there was any fraud, to rescind with reasonable promptness after the discovery of the alleged fraud.

■ Contracts induced by fraud are voidable, not void. 12 Am.Jur., Contracts, § 146; Restatement, Contracts, § 476.

■ If a party defrauded elects to rescind a contract for fraud, he must do so with reasonable promptness after the discovery of the fraud. 12 Am.Jur., Contracts, § 146; Kramer v. K. O. Lee & Son Co., 61 N.D. 28, 237 N.W. 166, 170; Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8 Cir., 295 F.2d 223, 229.

■ Mr. Stensland, defendant's underwriter who determines the acceptability of applications, stated that he again reviewed the applications on April 5 after he had received the investigation reports, the contents of which are not set out in evidence. As heretofore stated, the policy had been issued and sent to the agent some time before April 1. On April 6, defendant through Mr. Stensland

wrote the Bergquist & Walker Agency as follows:

"Re: Our policy 332973
"Peter M. Schmidt

"We have completed our investigation of the above insured and because of information developed, *we do not desire to continue the policy.* I note that a report was furnished another company in February of 1960 and they evidentally [sic] also refused to insure this party. A report was furnished another company in December of 1959 and October of 1959, and it appears that he has been going from one company to another trying to secure insurance. He evidentally [sic] gave you false information when he applied to you for insurance.

"I trust you understand our position in the matter and thank you for your usual cooperation. *If the policy has not been returned by April 19, a direct notice of cancellation will be in order.*" (Emphasis added.)

Said letter reflects that the company at least by April 6 had knowledge of the claimed fraud. It is apparent from an examination of the letter that it is not a notice of rescission of the policy or intended as such. It is not addressed to the insured. It is undisputed that the contents of the letter did not come to Schmidt's attention until after the accident on April 8. Even if the insured had received the letter, he would have been led to believe that the policy would remain in force at least until April 19, and such further period as might be necessary to comply with the cancellation provisions of the policy. The cancellation provisions of the policy provide for pro rata payment of premium in event of cancellation by the company. Thus, while the defendant may have been entitled to rescind the contract upon acquiring full knowledge of the facts, the letter quoted above makes it entirely clear that it did not do so.

■ Plaintiffs, in a separate count of their petition, based insurance coverage on the theory of negligent delay. Liability of an insurer under North Dakota law may be based upon negligent delay in acting upon an application. Mann v. Policyholders' Nat. Life Ins. Co., 78 N.D. 724, 51 N.W.2d 853, 856; Bekken v. Equitable Life Assur. Soc., 70 N.D. 122, 293 N.W. 200. See also Annot., 32 A.L.R.2d 487, 511.

In the Mann case, the court states:

"In that case [Bekken case, supra] this court approved and followed a long line of decisions, ably, analyzed, which hold: 'That an insurance company that has solicited and received a completed application for insurance is under a legal duty to take prompt action on the application, and give prompt notice to the applicant of its action; and that consequently such insurance company is liable in tort for negligent delay in acting upon the application, and notifying the applicant in case the application is rejected.' While other courts have held to the contrary, that principle was adopted and is controlling in this state." 51 N.W.2d 856.

■■ The applications for insurance were made on March 18, 1960. The accident creating the liability occurred on April 8, 1960. Schmidt received no notice of rejection of the policy at any time prior to the accident. What constitutes a reasonable time for action by the insurance company upon the application ordinarily presents a fact issue. We are satisfied that a fact question on the issue of reasonable time is here presented.

To the extent that the liability of the insurer may be predicated on negligent delay, it would seem that under North Dakota law the question of the falsity of the application would not be controlling. The North Dakota cases cited do not consider that question. The view of the trial court is reflected by its instruction, wherein it states:

"In this case, if you find that the applicant made misrepresentations which would otherwise defeat or

avoid the policy or prevent its attaching, but also find that the company was guilty of negligent delay in failing to act upon such application and notify applicant of its rejection with reasonable promptness, then your verdict should be for plaintiffs to the extent of the policy limits."

Defendant has failed to show that such is not a permissible conclusion upon the basis of North Dakota law. We are satisfied that the court committed no error in submitting the policy liability issue to the jury.

This leaves for consideration the issue of whether the trial court was justified in its determination that a jury issue is presented on whether defendant was guilty of bad faith in refusing to settle the claims against its insured for a sum within the policy limits. No North Dakota cases have either been cited or found dealing with the basis for an insured's recovery for the excess of judgments obtained against him above the policy limits.

Many courts have considered the liability of the insurer in such a situation. For a collection and discussion of such cases, see Annot., 40 A.L.R.2d 168; Keeton, "Ancillary Rights of the Insured Against His Liability Insurer", 28 Ins. L.J. 395 (July, 1961); Wymore, "Safeguarding Against Claims in Excess of Policy Limits", 28 Ins.L.J. 44 (January, 1961); 7A Appleman, Insurance Law & Practice, §§ 4712–13.

It is pointed out in the foregoing authorities that in some jurisdictions liability of an insurer for refusal to settle within the policy limits is based on bad faith, and that in some other jurisdictions liability is based upon negligence. Appleman, supra, states:

"[M]any decisions, representative of many jurisdictions, have coupled in their discussions the terms 'bad faith' and 'negligence', seeming to use them as disjunctive or alternative tests. It is partly on this account—also partly because the same states will occasionally refer to one

test and upon other occasions to the other—that the conclusion must be drawn that mere terminology means little. It is rather the factual situation which is significant in the light of the duty which exists, and normally the trier of fact must make the determination of liability or non-liability."

The trial court's instructions reflect his belief that under North Dakota law a recovery against an insurer for the excess above policy limits may be had by the insured if the insurer is guilty of bad faith. The parties appear to be in agreement that bad faith is the test to be applied. Defendant's position is that there is no evidence to support a finding of bad faith.

Little purpose would be served in attempting to analyze in detail the many cases collected and discussed in the authorities heretofore cited. Many cases have held that under the circumstances of the case a fact issue was presented on liability for the excess above policy limits. Others have held to the contrary. Facts involving the accidents creating liability and the steps taken to protect the insured's interest necessarily vary from case to case.

While the instructions given in the present case are not challenged and are not controlling on the sufficiency of the evidence issue, they do reflect the standards the court had in mind in passing upon the sufficiency of the evidence. The court instructed as follows:

"Generally speaking, 'Good faith' means faithful to one's duty or obligation; a good faith decision not to settle must be an honest and intelligent one, based on a knowledge of the facts and of the nature and extent of the injuries so far as they can be reasonably ascertained, and requires the insurer to make diligent effort to ascertain the facts.

" 'Bad faith' is a state of mind indicated by acts and circumstances and provable by circumstantial, as well as by direct, evidence, and must

be determined on the particular facts of each case.

"In this case, in deciding the issue of good or bad faith, if you arrive at that point, you may take into consideration, in addition to the evidence pertaining to the accident and injuries resulting therefrom, and the investigation of same by the defendant company, the bona fide or good or bad faith contention of said company in denying coverage to Mr. Schmidt in the first instance. That is, the fact that there was in existence, prior to the time of any settlement negotiations, a controversy between the defendant company and Mr. Schmidt over the existence of insurance coverage may be considered by you in determining the issue of good or bad faith. Of course all other evidence, if any, relevant to such issue may receive such consideration as you deem proper, if you arrive at that point."

Such standards find support in the recent cases. Ordinarily the question of good faith is a fact issue for the jury. See Bell v. Commercial Insurance Co., 3 Cir., 280 F.2d 514; Tennessee Farmers Mutual Ins. Co. v. Wood, 6 Cir., 277 F.2d 21; American Fidelity & Casualty Co. v. Greyhound Corp., 5 Cir., 258 F.2d 709; United States Fidelity and Guaranty Co. v. Canale, 6 Cir., 257 F.2d 138.

No precise formula can be prescribed for determining the sufficiency of the evidence on the good faith issue. Judge McAllister, in Tennessee Farmers Mutual Ins. Co. v. Wood, supra, thus states the test:

" 'If the proof, in the light of all the relevant circumstances, and inferences to be drawn therefrom is such as to leave a reasonable basis for disagreement among reasonable minds, the question of good faith of the insurer in the handling of the claim and conducting compromise negotiations is for the jury.' " 277 F.2d 35.

Such is the usual test followed in determining the sufficiency of evidence to support a claim. In the light of the foregoing standards, the court committed no error in submitting the good faith issue to the jury. We shall not discuss the evidence in detail. The defendant undertook to defend the accident claims under a nonwaiver agreement because of its denial of insurance coverage. Before trial of the negligence actions, against the insured, defendant received an offer to settle all claims for $12,000, a sum well within the policy limits. Schmidt urged defendant to accept such offer. That defendant recognized that a strong case on liability and damages existed, which might well result in recovery beyond policy limits, is reflected by its offer to settle such claims for $12,000 provided Schmidt would secure it, so that it could be reimbursed if it was later determined that there was no liability under the policy, and its alternate proposition that it would make the settlement if Schmidt contributed $6,000 in cash toward it.

In Maryland Cas. Co. v. Cook-O'Brien Constr. Co., 8 Cir., 69 F.2d 462, involving Missouri law, an insurer's attempt to get its insured to contribute to a settlement within policy limits was considered to be evidence of bad faith. In this case, however, the trial court was apparently of the view that under North Dakota law such an attempt by an insurer might be justified by the existence of a good faith policy defense. See United States Fidelity & Guaranty Co. v. Canale, supra. Hence, we have given no weight to this factor in our consideration of the case.

We believe that, under the record in this case, a fact issue is presented on the issue of bad faith on the part of the defendant in denying insurance coverage, particularly in view of its letter hereinabove set out, written after the discovery of the alleged fraud, wherein it recognized the continuing existence of the policy. The fact that no notice of rejection of the application or rescission was given, accompanied by the fact that Schmidt was assured that the insurance

coverage was effective from the date of application, is also entitled to consideration.

We conclude that defendant has failed to demonstrate that no fact issue has been presented for the consideration of the jury on the bad faith issue.

The court committed no error in overruling defendant's motions for directed verdict and for judgment n. o. v.

Affirmed.