The WESTERN CASUALTY AND SURETY COMPANY, a Corporation, Appellant,

v.

Margy HERMAN, Mark Lowell Herman, and Leo Newman, Appellees.

No. 17203.

United States Court of Appeals
Eighth Circuit.

June 13, 1963.

Don B. Sommers, St. Louis, Mo., for appellant; Barnhart & Sommers, St. Louis, Mo., with him on the brief.

Douglas H. Jones, St. Louis, Mo., for Margy Herman and Mark Lowell Herman.

Paul L. Bradshaw, Springfield, Mo., for appellee Leo Newman; Neale, Newman, Bradshaw, Freeman & Neale and Jean Paul Bradshaw, Springfield, Mo., and Hugo M. Walther, of Thompson, Walther & Shewmaker, St. Louis, Mo., with him on the brief.

Before JOHNSEN, Chief Judge, MATTHES, Circuit Judge, and GIBSON, District Judge.

MATTHES, Circuit Judge.

The basic question for determination in this declaratory judgment action instituted by The Western Casualty and Surety Company (Western) is whether an automobile liability insurance policy issued by it was in force and effect at the time the automobile covered by the policy was involved in an accident. The trial court found that the policy was effective and that the person driving the automobile at the time was entitled to indemnity from Western under the "omnibus" clause and within the policy's limits for liability to an occupant of the automobile who was injured in the accident. Western has appealed. Diversity of citizenship and the amount involved establishes jurisdiction.[1]

A brief résumé of material evidence will suffice for a proper understanding of the controverted issues.

At the time the policy was issued, Mark Herman was 22 years of age and

---

1. The limits of liability under the policy were $25,000 for injuries or death to one person, and $50,000 for injuries or death to more than one person arising out of the same accident. On oral argument we were advised that a judgment in excess of the limits of the policy has been rendered in another action in favor of the injured occupant and against Mark Herman, who was operating the vehicle when the accident occurred.

living with his widowed mother, Margy Herman. The insured 1951 Dodge automobile was purchased on or about April 1, 1957, and certificate of title thereto was issued by the State of Missouri to Mark Herman. On or about April 2, 1957, through its authorized agent, Sam Glassman, Western issued the policy in question to Margy Herman, the named insured, effective for a period of one year. Subject to the terms, conditions and agreements contained in the policy, Western agreed to pay on behalf of the named insured and on behalf of any other person while operating or using the automobile with permission of the named insured, any amount which such person should become legally obligated to pay as damages on account of personal injuries or death sustained by any person arising out of the ownership, maintenance or use of the automobile.

The insured automobile, while being driven and operated by Mark Herman on May 25, 1957, collided with a bridge abutment, causing Leo Newman, who was an occupant of the automobile, to sustain injuries. Shortly thereafter Newman asserted a claim for damages, and Margy and Mark called upon Western to investigate the accident, defend them in connection with the claim, and to pay any judgment against either of them within the limits of the policy. On June 5, 1957, during the course of the investigation conducted by Western, a statement was taken by Western's representative from Mark, whereby Western learned that title to the insured automobile had been issued to Mark. Subsequently, on June 28, 1957, Western obtained a reservation of rights agreement from Margy, but purposely avoided taking such a "Reservation Agreement" from Mark.

The policy contained certain declarations and conditions, two of which are pertinent to resolution of the coverage question. Item 6 of the Declarations provides:

"Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance the named insured is the sole owner of the auto:"

No exception was noted. Under "Conditions" appearing in the policy, it is provided:

"26. Declarations: By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Subsequent to the taking of the "Reservation Agreement" from Margy Herman, Western continued efforts to effect a settlement of Newman's asserted claim against Mark Herman. Eventually, on November 15, 1957, Western instituted this declaratory judgment action against Margy Herman, Mark Lowell Herman and Leo Newman. In summary, its pleaded theory of non-liability for Newman's damages is that the policy was void from its inception because: (1) Mark was the sole owner of the automobile and Margy had no insurable interest therein; (2) the declaration that Margy was the sole owner of the automobile was false and was material to the risk; and (3) Western would not have issued the policy if it had known that Mark was the owner of the automobile and that he would use it in his business as a professional wrestler.

The trial judge filed a memorandum opinion embracing, in pertinent part, the following findings of fact and conclusions of law that highlight the controverted factual questions below:

(1) Mark Herman was the sole user and the sole owner of the 1951 Dodge in question;

(2) Mark Herman's ownership of the automobile was not disclosed to Western before the policy was issued;

(3) Western would not have insured the automobile had it known that Mark Herman had an interest in it;

(4) The policy was *not* void ab initio since in Missouri the requirement of insurable interest is inapplicable to liability insurance;

(5) Even if the statements declaring Margy Herman to be the sole owner of the automobile were material misrepresentations, the policy was at most voidable, and not void;

(6) Assuming the policy to be voidable, Western, instead of rescinding the policy within a reasonable time, pursued a course of conduct indicating its intention to keep the policy in force, and thus waived any right to rescind; and

(7) The "omnibus" clause of the policy applied to Mark Herman even though he was the sole owner of the automobile because Sam Glassman, agent for Western, obviously knew that Mark would drive the automobile and that coverage was intended for him.[2]

■ At the outset, we once again observe that the trial court has the prime responsibility for determining doubtful questions of local law in diversity cases. Here, where the governing law is concededly that of Missouri, our task in reviewing unsettled questions of Missouri law is limited to ascertaining whether the trial court reached a permissible conclusion. Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8 Cir., 295 F.2d 223, 227 (1961); Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734 (1957).

Western primarily contends that the insurance contract was void ab initio rather than merely voidable and that therefore appellant could not possibly have waived its right to avoid the policy. Western first argues that the court's conclusion that the policy was not void ab initio is contrary to the court's factual finding that Margy Herman had no interest, insurable or otherwise, of any

kind, in the automobile which was insured. But Western's interpretation of the court's findings does not convey their true import. Quoting from Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 6, Part I, § 3873 (1945) [cited with approval in Grafton v. McGuire, 362 Mo. 882, 245 S.W.2d 69, 71 (1952)], the court stated that the requirement of insurable interest is inapplicable to liability insurance, and that the right of the insured to recover under a liability policy does not depend upon his being the holder, in fact, of either a legal or equitable title or interest in the property. However, contrary to Western's assertion, the court did not find that Margy was a complete stranger to the ownership, possession and operation of the automobile of her son. The above-cited section of Blashfield, relied upon by the court, further provides that the right of the insured to recover under a liability policy depends upon "whether he is primarily charged at law or in equity with an obligation for which he is liable."

■ Western concedes that an "insurable interest" in an automobile is quite different when applied to liability insurance, than when applied to either collision loss or theft, or comprehensive loss. But, relying on Appleman, Insurance Law and Practice, Vol. 7, § 4253 (1962), Western asserts that an "insurable interest" is nonetheless necessary to the validity of an automobile liability policy, and that the lower court's finding to the contrary is erroneous. It is significant, however, that, according to the same section of Appleman, supra, pp. 10–11, "almost any hazard which may expose a person to pecuniary loss may constitute a valid insurance interest," and "the risk insured against is not based on ownership of property, but upon loss and injury caused by its [the property covered

---

**2.** In their second amended counterclaim, the Hermans alleged that although Sam Glassman, Western's authorized agent, had been informed prior to issuance of the policy that Mark was the owner of the automobile and that it would be used by both Mark and Margy, the policy by mistake had been issued showing only Margy as the named insured. The Hermans prayed for reformation of the policy to show Mark as the named insured and as owner of the automobile. There was evidence to support these allegations, but rather than reform the policy, the court, as noted, found Mark covered under the "omnibus" clause.

by liability insurance] use for which the insured might be liable." Thus, despite technical semantic differences, the authorities are in apparent agreement that the only interest necessary to the validity of an automobile liability insurance policy is that the insured may incur liability because of the operation or use of the automobile. See, Hall v. Weston, 323 S.W.2d 673 (Mo.1959); Grafton v. McGuire, supra, 245 S.W.2d 69, 71, citing Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 6, Part I, § 3873; Ohio Farmers Insurance Co. v. Lantz, 7 Cir., 246 F.2d 182 (1957), cert. denied, 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113 (1957); Osborne v. Security Insurance Co., 155 Cal.App.2d 201, 318 P.2d 94, 97 (1957); Truck Ins. Exchange v. Hanson, 42 Wash.2d 256, 254 P.2d 494 (1953); Mid-States Ins. Co. v. Brandon, 340 Ill.App. 470, 92 N.E.2d 540 (1950); 7 Am.Jur.2d, Automobile Insurance § 13; 5A Am.Jur., Automobile Insurance § 12; 44 C.J.S. Insurance § 198; Annot., 77 A.L.R. 1256 (1932). Contra, Kelly Contracting Co. v. State Automobile Mut. Ins. Co., Ky.App., 240 S.W.2d 60 (1951).

In the leading Missouri case on the subject, Hall v. Weston, supra, 323 S.W. 2d 673, 679, the Missouri Supreme Court announced that Kelso v. Kelso, 306 S.W. 2d 534, 71 A.L.R.2d 258 (Mo.1957), "should not be considered authority for the proposition that a named insured needs to have an insurable interest" where an automobile liability policy is involved. Although a sole ownership declaration was not involved in the Hall case, the court stated that even if such a declaration were a part of the policy, "the question of whether that policy provision had been complied with, would not involve any question of insurable interest." 323 S.W.2d at 679. The court further stated that:

"* * * proof that an automobile was owned by named insured or that he had an insurable interest

therein is not necessary. Ownership under (those) circumstances is irrelevant on the question of liability." 323 S.W.2d at 679.

■ The record demonstrates that Sam Glassman, Western's agent, was more than casually acquainted with the Hermans, had handled other insurance for them, and was aware that Mark wrestled professionally. Glassman caused the policy to be issued knowing that the automobile covered by the policy would be used by both Margy and Mark; that Margy intended to use it to go back and forth to work even though an illness prevented her personal use of the automobile which was subsequently demolished in the accident. It is also significant that Mark lived with his widowed mother; that Margy owned no other automobile, and had not even yet obtained a driver's license; and that Margy had no other private means of transportation. Under these facts and circumstances, Margy possessed a cognizable insurable interest in the automobile—an interest which could expose her to liability from its maintenance or use. Thus, we are satisfied that the trial court certainly reached a permissible conclusion in holding that the policy was not void because the certificate of ownership was held by Mark Herman.[3]

Alternatively, Western contends that the declaration as to sole ownership of the insured automobile constitutes an absolute and mandatory condition of the contract and that under Missouri law the misrepresentation of such ownership renders the policy void ab initio.

■ The general rule, recognized in Missouri, is that a misrepresentation as to the ownership of a motor vehicle covered by a liability insurance policy is material to the risk assumed by the insurer. 7 Am.Jur.2d, Automobile Insurance § 18; 5A Am.Jur., Automobile Insurance § 17; Minich v. M. F. A. Mutual Insurance Co.

3. See, Bettinger v. Northwestern Nat. Cas. Co., 8 Cir., 213 F.2d 200, 206 (1954), cert. denied, 348 U.S. 856, 75 S.Ct. 80, 99 L.Ed. 674 (1954), where we accepted the trial court's views on the doubtful question under Minnesota law of whether the rule of "insurable interest" has application to a liability insurance policy.

(Mo.App.), 325 S.W.2d 56 (1959) (liability policy—misrepresentation as to physical disability and prior cancellation); Gooch v. Motors Insurance Co. (Mo. App.), 312 S.W.2d 605 (1958) (liability and comprehensive policy—misrepresentation as to age of insured). See also Didlake v. Standard Insurance Co., 10 Cir., 195 F.2d 247, 33 A.L.R.2d 941 (1952).

Appellee Newman takes the position that under the instant facts the declaration of sole ownership was not material to the risk, relying upon such cases as, Ohio Farmers Insurance Company v. Lantz, supra, 246 F.2d 182; Pontious v. American Motorists' Ins. Co., 158 Wash. 264, 290 P. 850 (1930); Mid-State Insurance Co. v. Brandon, supra, 92 N.E.2d 540; Pauli v. St. Paul Mercury Indemnity Co., 167 Misc. 417, 4 N.Y.S.2d 41, aff'd 255 App.Div. 935, 8 N.Y.S.2d 691 (1938); Commonwealth Casualty Co. v. Arrigo, 160 Md. 595, 154 A. 136, 77 A.L.R. 1250 (Md.App.1931).

■ Although we adhere to the general rule and recognize that a representation by the insured that he is the sole owner of the insured motor vehicle may be material to the risk and that an insurance company might refuse to issue the policy if true ownership of the vehicle was within its knowledge, nevertheless, on this record the question is not entirely free from doubt. However, as previously noted, the trial court made a finding favorable to Western on the question of materiality. We refrain from making an express ruling on this issue because we are convinced that the false representation that Margy was the sole owner of the insured automobile, even if material, did not render the policy void ab initio, but merely voidable. This is a general principle of contract law, 17 C.J.S. Contracts § 166; is recognized in Missouri, Hudspeth v. Zorn, 292 S.W.2d 271 (Mo. 1956); has been applied to insurance contracts generally, Appleman, Insurance Law and Practice, Vol. 12, § 7305 (1943); Milbank Mutual Ins. Co. v. Schmidt, 8 Cir., 304 F.2d 640 (1962); and has been applied by the Missouri courts to automobile liability insurance, Minich v. M. F. A. Mutual Insurance Co., supra, 325 S.W.2d 56.

Significantly, Western's present void ab initio theory does not square with its course of action prior to institution of this litigation. As stated, it acquired knowledge of Mark's title ownership on June 5, 1957. However, in its investigation of the accident and during attempts to settle and compromise the Newman claim, it did not expressly or impliedly declare or indicate that the insurance policy had never been in effect and was void from its inception. On the contrary, in the "Reservation Agreement" with Margy, drafted by Western, it reserved "unto the said company [Western] all its rights and defenses under said policy of insurance * * *." Without further discussion or elaboration, we are fully satisfied that the district court properly ruled that the policy was merely voidable.

This brings us to the final contention, namely, that in any event, Western did not waive the right to avoid liability under the policy and that the court erred in so holding.

■ The rule having pertinent application to this issue is that a right to rescind or cancel a contract must be exercised promptly on discovery of the facts from which it arises; it may be waived by treating the contract as a subsisting obligation. 12 Am.Jur., Contracts §§ 447, 449; Milbank Mutual Insurance Co. v. Schmidt, supra, 304 F.2d 640; Security Insurance Co. of New Haven v. White, 10 Cir., 236 F.2d 215, 219 (1956); Harry M. Fine Realty Co. v. Stiers (Mo.App.), 326 S.W.2d 392 (1959).

■ The Missouri decisions seem to hold that waiver and estoppel are ordinarily factual questions and should be determined on a case-to-case basis. See Cannon v. Travelers Indemnity Co., 8 Cir., 314 F.2d 657, 663–664 (1963), and cases there cited. It is, of course, fundamental that we as a reviewing court cannot set aside findings of fact unless it is clearly demonstrated that they are without adequate evidentiary support in the record or were induced by an erro-

neous view of the law. Nelson v. Seaboard Surety Co., 8 Cir., 269 F.2d 882, 886 (1959). A finding is clearly erroneous within the meaning of Rule 52(a) of the Fed.R.Civ.P. when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Mothner v. Ozark Real Estate Co., 8 Cir., 300 F.2d 617 (1962).

■ The trial court's opinion demonstrates careful consideration of the evidence on the waiver issue, plainly one of fact for determination by that court. We are fully convinced that the court's resolution of this question is not clearly erroneous.

■ We are of the view that on all of the facts and circumstances the trial court would have been justified in reforming the policy to include Mark Herman as the named insured. However, as stated, the court did not specifically grant this relief but held that Western was liable under the "omnibus" clause, which afforded protection to any person using the insured automobile with the permission of the named insured. At first blush it may appear anomalous to suggest that the owner of an automobile not named as an insured in a liability insurance policy may operate the automobile with "permission" of the named insured within the meaning of the "omnibus" clause of the policy. There is, however, a sharp conflict of authority on this question. See Appleman, Insurance Law and Practice, Vol. 7, § 4358, pp. 266–268 (1962). The Missouri courts have not to our knowledge expressly ruled upon the precise question, but in light of the liberal construction of and the broad coverage granted under the "omnibus" clause in two cases decided by a Court of Appeals of Missouri, Haynes v. Linder (K.C.C.A.), 323 S.W.2d 505 (1959), and Lajoie v. Central West Casualty Co., 228 Mo.App. 701, 71 S.W.2d 803, 814 (1934), we are not prepared to say that on the peculiar facts of this case the Missouri

Supreme Court would hold that the "omnibus" clause did not provide coverage to the owner-driver of the insured vehicle.

The judgment is

Affirmed.