SPERRY, Commissioner.
This suit is based on plaintiff’s right to subrogation against defendant. The case was tried to the court on an agreed statement of facts and resulted in judgment for plaintiff in the sum of $10,144.26. Defendant appealed.
Plaintiff, engaged in the automobile insurance business, in Missouri, issued its policy to Roberta E. Spargur, of Kansas City, Missouri, insuring her against liability for personal injuries inflicted by or through the operation of her 1952 Chevrolet passenger automobile described therein. The contract became effective July 14, 1955, and was in full force at all times material herein. The extent of personal injury liability covered by the policy was $15,-000.00 for any one person. That feature of the policy was extended to cover anyone operating the automobile with Miss Spar-gur’s consent.
On February 25, 1961, while this automobile was being operated by Mr. Kilby F. Johns, with the consent of Miss Spargur, and while its ownership was vested in Miss Spargur, it struck and injured a Mr. Scog-gins, a pedestrian, on a Kansas City street. Mr. Scoggins sued Johns and plaintiff settled and satisfied that claim for personal injuries in the amount of $11,500.00. In defending and settling said claim it incurred expenses, in addition to that amount, in the sum of $1,678.52.
*532 Miss Spargur authorized Johns to use her automobile, above described, since she owned another and newer automobile which she had acquired. From that time forward, Mr. Johns kept the automobile in his possession and paid all expenses thereon, including licenses, repairs, and gasoline. He was using it when he became an employee of Jenkins Music Company. Immediately after Johns was employed, in 1958, Jenkins caused to be issued to Mr. Johns a certificate of insurance issued by defendant, naming therein Jenkins and Johns as insureds. The Chevrolet automobile herein mentioned was described in that certificate. The coverage was for $50,000.00, for personal injuries suffered by any one individual in any one accident. That certificate did not insure against any loss or damage to the automobile itself, in any manner. All premiums had been paid thereon and it was current when this casualty occurred.
Johns testified to the effect that, after the accident occurred, he was sued and summons was served on him; that he notified defendant; that its agent contacted him and investigated the circumstances; that he told Johns that the loss would be adjusted and settled; that, later, defendant declined to pay the claim or to defend the suit; that it notified him to contact plaintiff, that plaintiff was primarily liable for the loss, up to $15,000.00; and that defendant would only be liable for any excess over and above $15,000.00, (the suit was for $40,000.00), within the limits of its coverage. Johns then notified plaintiff of the casualty and plaintiff assumed the defense of the suit, with defendant’s full knowledge. Defendant refused to participate in the defense in any way, taking the position that plaintiff, alone, was liable to the full extent of its coverage, and that defendant was liable only for the excess, if any, over and above plaintiffs liability under its policy. It is agreed that the sum paid by plaintiff herein, including attorney fees and other expenses, is reasonable. Plaintiff says it is entitled to recover fifty/sixty fifths of that amount on the theory that defendant should pay its pro rata share of the loss based on the total coverage. The sum adjudged to plaintiff against defendant is correct and in accord with that theory, if plaintiff is entitled to recover under its theory of liability.
The evidence is to the effect that neither party knew the other had issued a policy covering this automobile, prior to the loss; but plaintiff knew that Johns was operating the vehicle while working for Jenkins, with Miss Spargur’s consent; and defendant had been told, through Jenkins, that there was other insurance on the car. Defendant now, weakly, contends that it is not liable under any theory because Johns was not operating the vehicle, at the time the accident occurred, on any business connected with Jenkins. When defendant first denied liability it was on the theory that it was liable under its policy only after liability under plaintiff’s policy was exhausted. It is a general rule of law that, having denied liability for a stated reason, an insurer may not, later assert a different one. McCarty v. United Insurance Company (Mo.App.), 259 S.W.2d 91, 94; Carroll v. Union Marine Insurance Company (Mo.App.), 249 S.W. 691, 692; Ash Grove Lime & Portland Cement Company v. Southern Surety Company, 225 Mo.App. 712, 39 S.W.2d 434, 441; Goffe v. National Surety Company, 321 Mo. 140, 9 S.W.2d 929, 938.
Defendant issued its certificate, describing this car, and both Jenkins and Johns are named therein. The language of the certificate does not limit defendant’s liability except as to amounts it is to pay in case of loss, and as to coverages, to wit:

100,000; “Bodily injury liability, .each occurrence,
10,000.00; “Medical payments, .each occurrence,
1,000.00;” “Medical payments.. each person,
*533 Furthermore, after the casualty occurred, defendant did not cancel the policy but merely increased Johns’ premium and the policy remained in effect until Johns left Jenkins employ. Defendant’s contention that it is not liable because the automobile was not being used in connection with Jenkins’ business when the casualty occurred is denied.
Mr. Johns testified to the effect that, immediately after he became an employee of Jenkins, Mr. Limbacher, his supervisor, told him that he would be required- to take out an insurance policy on the automobile; that Johns told him that the vehicle was already insured; that Limbacher stated, over the telephone, that he must have a company policy and requested him to furnish a description of the car that he was driving; that, he, Johns, on the following day, furnished the description of the Chevrolet as it appears in the certificate of insurance; that he, at no time, signed an application form, nor did he ever see the certificate which was issued to Jenkins by defendant. He stated that he was sent a card which bears the following on its face:

The back of this card contains only data which should be furnished to defendant in case the insured vehicle should be involved in an occurrence that might give rise to a claim for damages.
Defendant’s chief contention is, as it was before plaintiff paid the claim for damages, that it is not liable on its policy except as an “excess” insurer, and that plaintiff’s total expenditure was less than its liability under its policy. We confess to some difficulty in fully understanding the logic of this contention, as presented. It seems to be based on a theory that, since the certificate issued to Johns under the master policy issued to Jenkins, AC224214, referred to the automobile as being “owned” and since it was not, in fact “owned” by Johns, as that term is defined in the master policy, some less coverage, other than full “primary” coverage, exists. Such contention may not be based on the fact this is a temporary substitute automobile because it is the automobile described as insured. Defendant refers, in its brief herein, to definitions of an “owned” automobile, and of a “non-owned” automobile, as the same appear in the master policy. Such definitions or differentiations do not appear in certificate C102060 issued for and covering Johns. Johns testified to the effect that he never saw either the certificate or the master policy; that he was told that he must have “compan}-” insurance on the car he *534 was driving; that he told Mr. Limbacher that there was insurance on the car; that Limbacher stated that, nevertheless, he must take out a “company policy”; that he must send in a description of the car; and that he did so. This testimony was not contradicted in any manner. He paid half of the annual premium thereon, and Jenkins the other half, from 1958 until the accident occurred, in 1961, and thereafter until he left Jenkins’ employment. Johns did not misrepresent the ownership of the title. He was not asked about it at any time. He did not see any instrument issued by defendant or Jenkins except Exhibit “E-b”, above set out. He made no false representations and was unaware of any claimed restrictions .in his policy. The ownership of an automobile is'irrelevant to the validity of an insurance policy covering only liability for bodily injuries and property damages. Hall v. Weston (Mo.), 323 S.W.2d 673, 679; Kahn v. Lockhart (Mo.App.), 392 S.W.2d 30, 37.
In North Kansas City Memorial Hospital v. Wiley (Mo.App.), 385 S.W.2d 218, 223, the court said:
⅜ ⅜ ⅜
“Our interpretation is in accordance with the usual rules of interpretation for insurance contracts. Missouri cases are legion which hold that, if there is reasonable doubt, or uncertainty as to the meaning of the language used in a policy of insurance and it is fairly susceptible of interpretation in favor of the insured, such meaning will be adopted. This is because it is the intent expressed in the policy that is to control and if the policy is reasonably susceptible of two or more interpretations, that which will sustain the insured’s claim must be adopted. Weinberg v. Globe Indemnity Co., Mo.App., 355 S.W.2d 341, 1. c. 347; Nationwide Mutual Ins. Co. v. Schilansky, D.C.Mun.pp., 176 A.2d 786; Gage v. Connecticut General Life Ins. Co., Mo.App., 273 S. W.2d 761, 47 A.L.R.2d 1234. It is a general rule of law that a contract or a policy of insurance should be given a liberal construction so as to uphold it and accomplish the purpose or object for which it is made, rather than a strict technical construction which may defeat such purposes. Grafton v. McGuire, 362 Mo. 882, 245 S.W.2d 69, 44 C.J.S. Insurance § 297, page 1165; Davis v. Liberty Mutual Ins. Co., 8 Cir., 308 F.2d 709.”
“ * * *»
Applying the above rules to the facts here in evidence we must hold, as did the trial court, that defendant’s certificate of insurance covered damages for bodily injuries suffered by Mr. Scoggins in this casualty, to the full extent of $50,000.00, for which Mr. Johns was legally liable. The certificate, as issued, plainly so states. The question as to limitations of liability on a “non-owned” automobile does not affect defendant’s liability in this case because the Chevrolet automobile involved herein is specifically and positively described in the certificate of insurance issued. This is not a case where Johns was, at the time the casualty occurred, operating another and different vehicle than the one which defendant specifically insured. In describing the vehicle, if defendant chose to use language, in some document that Johns never saw, which might give rise to a specious and technical defense in this action, nevertheless the plain, ordinary meaning of the language of the policy must be given effect. Mr. Johns was insured against this claim by the very terms of the policy, which specifically described the vehicle insured and which he was operating when the casualty giving rise to this claim occurred.
Defendant has, at all times, insisted that the loss herein was one which plaintiff, alone, was bound to pay under its policy issued to Miss Spargur, and under which Johns was an insured. Defendant denied that it was liable under its policy, issued to Johns, on the ground that it was bound only to pay any loss in excess of the amount of $15,000.00, the amount of the *535 plaintiff’s policy. Defendant refused to defend and advised Johns to demand that plaintiff defend the suit. Defendant was fully advised, at all times, of the nature and progress of plaintiff’s negotiations leading up to the final settlement of the claim, and agrees that the amount paid in settlement thereof was reasonable. It now denies the right of plaintiff to maintain this suit under its claimed right of subrogation.
One reason advanced in support- of this contention is that plaintiff may not subro-gate against its own insured. In Northwestern Mutual Ins. Co. v. Haglund, 387 S.W.2d 230, 231, this court, while not ruling the point, strongly indicated that such is the law. However, that principle has no application here because plaintiff has not sued either of its insureds, Miss Spargur or Mr. Johns. It seeks recovery from a co-insurer of the amount paid on a pro rata basis.
The facts in this case are very similar to those in Liberty Mutual Ins. Co. v. Standard Accident Ins. Co. (U.S.D.C.S.D.N.Y.), 164 F.Supp. 261. In that case both plaintiff and defendant had issued policies to the same insured. Each policy contained similar clauses concerning “other insurance” and “subrogation”. That is also true in the instant case. On pages 263 and 264, the court said:
“ * * * The amount paid in settlement fixes the amount of the loss which the co-insurers must share. True the amount paid must be reasonable, cf. Royal Indem. Co. v. American Cas. Co., 5 Misc.2d 533, 159 N.Y.S.2d 45, but the fact that the payment was less than the judgment here is prima facie proof of its reasonableness. Plaintiff, by virtue of its payment and under the terms of the subrogation clause, was subrogated to all rights which the insured would have against defendant. If the insured had made the settlement and the payment after defendant’s disclaimer of coverage, defendant would have been liable to the insured for its share of the settlement payment. Defendant is similarly liable to plaintiff under the terms of the subrogation clause. This conclusion is in accord with Commercial Standard Ins. Co. v. American Emp. Ins. Co., 6 Cir., 209 F.2d 60. See also United States Guarantee Co. v. Liberty Mut. Ins. Cas., 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632; Detroit Auto. Inter-Ins. Exchange v. Detroit Mut. Auto Ins. Co., 337 Mich. 50, 59 N.W.2d 80.”
In United States Guarantee Co. v. Liberty Mut. Ins. Co., 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632, 636, the court said:
“ * * * The plaintiff by and under its contract with assured agreed ‘to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * ’. In paying the damages to Gaurkee it performed the terms of its contract with the assured, as the defendant had breached and violated its contract for a like liability. By the terms of its policy plaintiff was subrogated to the rights of the assured which, under the decisions, is a substitution of one person in the place of another with reference to a lawful claim or right. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by one who in good conscience ought to pay it. Leonard v. Bottomley, 1933, 210 Wis. 411, 245 N.W. 849; Northern Assurance Co., Ltd. v. [City of] Milwaukee, 1938, 227 Wis. 124, 277 N.W. 149. If assured had made settlement with Gaurkee and was the plaintiff in this action, defendant would be liable for the amount now claimed. By payment of the entire amount, plaintiff is substituted in place of the assured with reference to a lawful claim or right. When defendant violated the contract by refusing to defend the Gaurkee action, a settlement by plaintiff and payment of the full damages did not make plaintiff a volunteer or interloper as to the payment for which this defendant is liable. * * * ”
In State ex rel. McCubbin v. McMillian, (Mo.App.), 349 S.W.2d 453, 1. c. 459 and 460, and 461, the court reached the same result as is stated in the above decisions.
*536 We hold that the judgment rendered in this case is for the right party, on the right theory, and for the correct amount due plaintiff. It is, therefore, affirmed.